UNITED STATES of America,

v.

Joseph Michael AGONE a/k/a "Joe Curly", Defendant.

No. 69 CR 360.

United States District Court
S. D. New York.

July 22, 1969.

Robert M. Morgenthau, U. S. Atty. for Southern District of New York, for United States of America; Elkan Abramowitz, Asst. U. S. Atty., of counsel.

Hallisey, Goldberg & Hammer, New York City, for defendant; Jay Goldberg, New York City, of counsel.

OPINION

FRANKEL, District Judge.

The one-count indictment in this case says:

"On or about the 11th day of March, 1969, in the Southern District of New York, JOSEPH MICHAEL AGONE, a/k/a/ 'Joe Curly', the defendant, unlawfully, wilfully and knowingly, did through the use of force and violence and the threat of the use of force and violence, restrain, coerce, intimidate, and attempt to restrain, coerce and intimidate a member of a labor organization engaged in an industry affecting commerce, to wit, a member of Local 11, Chain Service Restaurant, Luncheonette and Soda Fountain Employees Union, Hotel and Restaurant Employees and Bartenders International Union (AFL–CIO), for the purpose of interfering with and preventing the exercise of a right to which the said member of the said labor organization was entitled under the provisions of Title 29, United States Code, Sections 401–531, to wit, the right to express views, arguments, and opinions."

Laid under 29 U.S.C. §§ 530 and 411 (a) (2), these allegations track the language of the former section.[1] They illustrate the frequently contested but commonly sustained technique of framing indictments in the general terms of the statute, with little or nothing more than time and place in the way of particulars.

Defendant has moved to dismiss. He argues that the indictment fails the test

1. § 530 provides:
"It shall be unlawful for any person through the use of force or violence, or threat of the use of force or violence, to restrain, coerce, or intimidate, or attempt to restrain, coerce, or intimidate any member of a labor organization for the purpose of interfering with or preventing the exercise of any right to

which he is entitled under the provisions of this chapter. Any person who willfully violates this section shall be fined not more than $1,000 or imprisoned for not more than one year, or both."
§ 411(a) (2) includes in the "bill of rights" for union members "the right * * * to express any views, arguments, or opinions * * *."

of Fed.R.Crim.P. 7(c), which requires "a plain, concise and definite written statement of the essential facts constituting the offense charged." In the moving papers, the gravamen of his thesis is the absence from the indictment of allegations showing "the particular manner and means of the alleged force or violence and the threat thereof."[2] As the debate has proceeded, however, it has been extended to encompass the point that the indictment does not name or otherwise identify the alleged victim beyond describing him as "a member of Local 11 Chain Service * * * Employees * * * Union * * *."

Defendant has also moved for a bill of particulars and several other kinds of relief. While the court's conclusion that the indictment must be dismissed moots the other questions, the arguments about particulars have helped, if somewhat fortuitously, to light the way toward that holding. Accordingly, this subject is covered in the following discussion.

The plain and concise words of Rule 7(c) implement vital guaranties of the Fifth and Sixth Amendments. The Rule makes it unnecessary, of course, to treat as a constitutional issue every dispute about whether an indictment is sufficiently clear and unambiguous. But the pertinent criteria derive none the less from our fundamental law—from the right not to be tried at all unless citizens comprising the grand jury have voted an indictment, and from the right " 'to be informed of the nature and cause of the accusation * * *.' " Russell v. United States, 369 U.S. 749, 761, 82 S. Ct. 1038, 1045, 8 L.Ed.2d 240 (1962). Our concern is not with matters of pleading etiquette or esthetics, but with substantial rights of the most essential kind. See *id.* at 763, 82 S.Ct. 1038; United States v. Lamont, 236 F.2d 312, 317 (2d Cir.1956); United States v. Kahn, 381 F.2d 824, 829 (7th Cir.), cert. denied, 389 U.S. 1015, 88 S.Ct. 591, 19 L.Ed.2d 661 (1967); Stapleton v. United States, 260 F.2d 415, 417–418 (9th Cir. 1958).

As they were lately restated by the Supreme Court, the

"criteria by which the sufficiency of an indictment is to be measured * * * are, first, whether the indictment 'contains the elements of the offense intended to be charged, "and sufficiently apprises the defendant of what he must be prepared to meet," ' and, secondly, ' "in case any other proceedings are taken against him for a similar offence, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction." Cochran and Sayre v. United States, 157 U.S. 286, 290, 15 S.Ct. 628, 630, 39 L.Ed. 704; Rosen v. United States, 161 U.S. 29, 34, 16 S.Ct. 434, 480, 40 L.Ed. 606.' Hagner v. United States, 285 U.S. 427, 431, 52 S.Ct. 417, 419, 76 L.Ed. 861. See Potter v. United States, 155 U.S. 438, 445, 15 S.Ct. 144, 146, 39 L.Ed. 214; Bartell v. United States, 227 U.S. 427, 431, 33 S.Ct. 383, 384, 57 L.Ed. 583; Berger v. United States, 295 U.S. 78, 82, 55 S. Ct. 629, 630, 79 L.Ed. 1314; United States v. Debrow, 346 U.S. 374, 377–378, 74 S.Ct. 113, 115–116, 98 L.Ed. 92." Russell v. United States, *supra* at 763–764, 82 S.Ct. at 1047.

Judged by these criteria, the indictment in this case survives defendant's charge that it should have "set forth the particular manner and means of the alleged force. or violence and the threat thereof." To be sure, there are varieties of force and violence and varieties of threats. In this sense, the indictment could be made more "definite." But the requirement is not to reach or approach some outer limit of ideal particularity; it is, within non-mathematical limits of sense and fairness, "to set forth without unnecessary embroidery the essential facts constituting the offense * * *." United States v. Lamont, *supra*, 236 F.2d at 315. In that

2. Supporting affidavit, pp. 2–3.

light, allegations charging the "use of force and violence and the threat" to use them are adequate. The possible particulars, though they could be moderately diverse, are scarcely infinite. The specific "manner and means" is not an element of the offense. Cf. United States v. Palmiotti, 254 F.2d 491, 495 (2d Cir. 1958); United States v. Fortunato, 402 F.2d 79, 81–82 (2d Cir.1968), cert. denied, 394 U.S. 933, 89 S.Ct. 1205, 22 L. Ed.2d 463 (1969); Mims v. United States, 332 F.2d 944, 946 (10th Cir.), cert. denied, 379 U.S. 888, 85 S.Ct. 158, 13 L.Ed.2d 92 (1964); Jackson v. United States, 123 U.S.App.D.C. 276, 359 F.2d 260, 262–263 (D.C.Cir.), cert. denied, 385 U.S. 877, 87 S.Ct. 157, 17 L. Ed.2d 104 (1966). The uncertainty is fairly and amply curable by a bill of particulars upon a suitable demand therefor.[3] See Mims v. United States, *supra*; Jackson v. United States, *supra*. See also United States v. Debrow, 346 U.S. 374, 378, 74 S.Ct. 113, 98 L.Ed. 92 (1953); Van Liew v. United States, 321 F.2d 664, 670 (5th Cir.1963); United States v. Wora, 246 F.2d 283, 286 (2d Cir.1957); United States v. Caine, 270 F.Supp. 801, 805 (S.D.N.Y.1967).

■ A more serious question and, in this court's view, a different answer result from the failure of the indictment to name the union member allegedly subjected to force, violence and threats. The identity and character of the victim are at "the very core of criminality." Russell v. United States, *supra*, 369 U.S. at 764, 82 S.Ct. 1038, under the statutes here in question. The section defining the offense, 29 U.S.C. § 530, is not a general proscription of assaults, but a particularized protection for (1) union mem-

bers against (2) violence or threats designed specifically to (3) restrain, coerce, or intimidate the member as a means of impeding his exercise of specified rights. The alleged victim—from whose identity, his status, his activities, and his relationship to the defendant become known or discoverable—is inescapably co-starred with the defendant. Where, as is not unlikely under the statutes here involved, the class of possible victims has a substantial membership, an indictment like the one in question becomes excessively and prejudicially uncertain. Cf. United States v. Simmons, 96 U.S. 360, 362–363, 24 L.Ed. 819 (1877); Van Liew v. United States, 321 F.2d 664, 668–674 (5th Cir.1963); United States v. Strauss, 285 F.2d 953, 955 (5th Cir.1960); Babb v. United States, 218 F.2d 538, 539–541 (5th Cir.1955); Lowenburg v. United States, 156 F.2d 22 (10th Cir.1946).

The precise nature of the flaw has been illuminated in this case by discussion of defendant's demand for particulars. The demand includes, of course, as an alternative to the prayer for dismissal, an item calling for the name of the union member. This prompts a question, given substance by august authority,[4] whether an omission so readily supplied should ever serve to nullify an indictment. However, beyond the general proposition "that a bill of particulars cannot save an invalid indictment," Russell v. United States, *supra*, 369 U.S. at 770, 82 S.Ct. at 1050, there is a concrete answer powerfully adverse to the government's position in this case.

Upon the argument of the motion, the prosecution consented without hesitation to the supplying of the alleged victim's

---

3. In his demand for a bill, a subject not reached for decision, defendant asks sweepingly for all "statements and/or acts by which it is claimed" he used force or threats. The prosecution, not less enthusiastic at the other extreme, opposes this as a "blatant request for the Government's evidence * * *." Memorandum in Opposition, pp. 3–4. Between these poles it should not be impossible to plot a middle ground.

4. See United States v. Polakoff, 112 F.2d 888, 890 (2d Cir. 1940), where the Court (per Learned Hand, J.)—sustaining an indictment for conspiracy "to influence and impede * * * officers" of the government against a complaint that the officers were not named—said: "We do not see why, if the accused were really in ignorance of this detail, they could not have been fully protected by a bill of particulars."

name. It was requested, however, that the delivery of this information be delayed until two weeks before the trial because, the government submitted, earlier revelation might endanger the union member in question. This proposal prompted a familiar corollary of the familiar skepticism as to whether defendants are "really" as much "in ignorance" as they profess to be, see Learned Hand, J., in United States v. Polakoff, quoted *supra* note 4; cf. Judge (later Justice) Whittaker in United States v. Smith, 16 F.R.D. 372, 375 (W.D.Mo. 1954). Does the prosecution genuinely believe—can it fairly be heard to contend—that defendant does not know the victim, so that early disclosure of the name would be dangerous? The answer, at least in part, is that the prosecution believes and claims precisely this. The actual circumstances, the United States Attorney represents, are such that defendant may well be uncertain or ignorant of the victim's identity, there being "a number of people" who might answer that description. Thus, it is said, the plea for delaying the disclosure rests upon real and substantial concerns.

However that might affect the handling of a bill of particulars (cf. note 5 and text, *infra*), it is a point of great interest touching the question as to the sufficiency of the indictment. If the alleged victim might have been one of at least several people—and with defendant presumed on both sides to be ignorant of his identity—there is a fatal departure from the definiteness required in an indictment. Cf. Blumenfield v. United States, 284 F.2d 46, 49–50 (8th Cir. 1960), cert. denied, 365 U.S. 812, 81 S. Ct. 693, 5 L.Ed.2d 692 (1961). We may assume (though there is no ground for certainty) that further developments in the case would supply protection against double jeopardy. It may be conceded that the indictment, though most vaguely on a key subject, asserts in general terms the elements of the offense. It is still critically deficient. For it reveals, on the government's own submissions, a failure by the grand jury to complete and record with certainty the task it (exclusively) has under the Fifth Amendment. The grand jury has neither said nor explained its failure to say who among a substantial number of possibilities is supposed to have been the target of the alleged crime. It has left the prosecution free to fill in this vital missing element—free, in a way which is constitutionally grave whether or not it is highly probable, to name someone different from the one intended by the grand jury. A prosecutorial power "to roam at large" in this fashion is not allowable. Russell v. United States, *supra,* 369 U.S. at 768–771, 82 S.Ct. 1038.

Even if, as is suggested, the victim's name should be withheld for a time in his interests and in the interests of justice, that is no reason for sustaining the indictment. The asserted need for secrecy in this or some other specific respect, when secrecy is a pervasive essential of the grand jury's work, is a delicate and debatable matter to which that body of citizens might make a wholesome contribution.[5] Without speculat-

---

5. In its initial papers responding to the demand for particulars, the government agreed, without conditions, to give the name of the victim. The request for court-approved delay was made upon oral argument.

A supplemental affidavit by the Assistant United States Attorney handling the case was thereafter filed in response to the court's suggestion that the asserted need for secrecy should be more formally and precisely documented. This document reiterates the worry about "physical danger" to the victim if his name is given too soon. It cites defendant's criminal record dating back to 1929 containing "approximately 15 arrests, 4 for assault." It reports a conviction for armed robbery upon which defendant was sentenced to a term of from 9 to 19 years. (It does not report—but there is no quarrel with defendant's reply reporting—that the conviction occurred in 1935, and that defendant has no others.) It refers, finally, to undisclosed things in the Government's files said to "indicate that the defendant is a member of the Genovese family of the Cosa Nostra."

The showing of danger is, in two words, not stunning. But the subject is a sensi-

ing about this, it is enough that the law allows leeway in proper cases for omitting names which, though normally required, either cannot or should not be stated in the indictment. But the pertinent facts in such cases should be considered by the grand jury and, to the extent practicable, stated in the indictment. See United States v. Simmons, *supra,* 96 U.S. at 363, 24 L.Ed. 819; Lauer v. United States, 320 F.2d 187, 190 n. 1 (7th Cir.1963); Swafford v. United States, 25 F.2d 581, 582–583 (8th Cir.1928); United States v. Bennett, 36 F.R.D. 103, 104–105 (E.D.S.C.1964).

The indictment is dismissed. So ordered.

tive one, and responsible assertions of this kind by the United States Attorney must be supposed to reflect a sober and considered judgment. It is not a judgment, however, which a court is free to endorse when the consequence is prejudice to a

litigant in any sort of case, especially a criminal prosecution. It is, at a minimum, a subject for appraisal by the grand jury as a basis for exercising its exclusive power to determine who should be indicted and in what terms.