UNITED STATES of America, Plaintiff-Appellee,

v.

David ROMAN, Defendant-Appellant.

No. 83-1093.

United States Court of Appeals, Seventh Circuit.

Argued May 23, 1983.

Decided Feb. 15, 1984.

Certiorari Denied May 14, 1984. See 104 S.Ct. 2360.

Gerald J. Meehan, Coryn, Walker & Meehan, Rock Island, Ill., for defendant-appellant.

Janet L. Jannusch, Asst. U.S. Atty., Peoria, Ill., for plaintiff-appellee.

Before CUDAHY, POSNER and COFFEY, Circuit Judges.

COFFEY, Circuit Judge.

The appellant, David Roman, was convicted on October 27, 1982, of conspiracy to distribute L.S.D. in violation of 21 U.S.C. § 846. In his appeal, Roman raises three sets of issues for review: (1) whether the indictment charging him with conspiring to distribute L.S.D. violated his Fifth and Sixth Amendment rights, (2) whether the trial court erred in refusing to strike the testimony of two government witnesses, and (3) whether the trial court erred in denying his motions for judgment of acquittal. We find the defendant Roman's contentions to be without merit and affirm his conviction.

I.

On May 26, 1982, the defendant, David Roman, was indicted along with eight other individuals. Roman was charged only in Count II of the ten count indictment. In particular, that count alleged that Roman conspired to distribute L.S.D. in violation of 21 U.S.C. § 841(a)(1). It asserted, in pertinent part, that from January 1, 1971 to May 26, 1982, in the Central District of Illinois and elsewhere, Roman conspired with twenty or more persons to distribute L.S.D., and in particular, that Roman and six of his co-defendants received L.S.D. from four unindicted co-conspirators for further distribution. The indictment also alleged ten separate overt acts committed in furtherance of that conspiracy, however, the defendant Roman was not referred to as a participant in any of the overt acts.

On September 8, 1982, Roman's motion for a Bill of Particulars was granted, and the Government complied on September 20, 1982. In this first Bill of Particulars the Government stated that Roman was recruited to sell L.S.D. by unindicted co-conspirator Dennis Justman sometime in the fall of either 1978 or 1979. It also stated that Justman delivered 1,000 to 4,000 dosage units of L.S.D. to Roman on a regular basis at Roman's place of business, a Clark gas station located on Sixth Avenue in Rock Island, Illinois. Roman subsequently moved for a second Bill of Particulars, and in response thereto the trial court instructed the Government, on October 21, 1982, to provide Roman with any further details. In the amendment to its Bill of Particulars the Government indicated that co-conspirator Dennis Justman began distributing L.S.D. to Roman in the fall of 1978 and that "Roman received quantities of 1,000–4,000 individual dosage units of L.S.D. from Justman on an average of once or twice a month until October of 1980, when Justman was arrested." Finally, the amendment stated, contrary to the first Bill of Particulars, that deliveries were made at a Clark gas station located on Sixth or Seventh Avenue in Rock Island, Illinois only during the first six or seven months of distribution to Roman. Thereafter, the deliveries were

made at a Clark gas station located on Eleventh Street in Rock Island, Illinois.

At trial, the Government presented the testimony of two co-conspirators, Dennis Justman and Donald Nelles. Justman testified that beginning in 1975 and continuing for approximately five years, he regularly obtained L.S.D. from co-defendant James Michael Remaly. He in turn then distributed this L.S.D. to various customers, including the defendant Roman, who was also known to Justman by the nickname "Stony." Specifically, Justman testified that he distributed L.S.D. to Roman from the middle of 1978 to the fall of 1980. During this period Justman stated he made approximately ten deliveries to Roman and that Nelles accompanied him on "a number of occasions." Justman also identified a slip of paper bearing the inscription "Ston" which he testified stood for Stony, i.e., David Roman. A telephone number was written on that slip of paper that Justman stated he used to contact Roman.

Nelles corroborated much of Justman's testimony. Under oath, Nelles testified that he had accompanied Justman approximately fifteen to twenty times between April of 1979 and June of 1980 to make deliveries to Roman at the Clark station located on Eleventh Street in Rock Island, Illinois. He further related that he had actually witnessed Justman transfer L.S.D. to Roman some five to ten times. Nelles estimated that between 1,000 to 4,000 dosage units of L.S.D. were transferred per delivery.

At the close of the Government's case-in-chief, the trial court instructed the jury to disregard any testimony concerning any sale or delivery of L.S.D. prior to April 1, 1979. The reason was that the testimony varied from the Government's Bill of Particulars since the station to which the deliveries were allegedly made prior to April of 1979 was not located in Rock Island but rather in Moline, Illinois. The court also instructed the jury to disregard any testimony referring to deliveries in excess of 4,000 dosage units since again such testimony was beyond the parameters of the information recited in the Government's Bill of Particulars.

In his defense, Roman called two former employees of the Clark gas station where he allegedly received the L.S.D. Both testified that the station building was locked to everyone but employees and close friends or relatives. They also testified as to Roman's reputation for truthfulness and honesty. Roman then called his wife who essentially corroborated the testimony of the two former employees. Finally the defendant testified on his own behalf. He denied ever having purchased L.S.D. from Justman or knowing Don Nelles.

On rebuttal, the Government called a third co-conspirator, Robert Siefken, who testified that he also had accompanied Justman on approximately ten occasions when L.S.D. was delivered to the defendant Roman. These deliveries occurred between the fall of 1978 and October of 1980.

On October 27, 1982, the jury found Roman guilty as charged under Count II of the indictment. From this conviction, the defendant Roman appeals.

## II.

### A. THE SUFFICIENCY OF THE INDICTMENT.

The defendant contends that the indictment in this case is fatally defective because: (1) it failed to meet the requirement of informing Roman of the charges against him with reasonable certainty in violation of his Sixth Amendment rights; (2) it is so vague that he may be subject to double jeopardy in violation of his Fifth Amendment rights; and (3) he may have been convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury that indicted him, in violation of his Fifth Amendment rights. We analyze each of these contentions separately.

Several general principles of federal criminal law should be mentioned before undertaking this analysis. Fed.R.Crim.P. 52(a) provides that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."

This rule applies when judging the sufficiency of an indictment. As the Supreme Court stated in *Russell v. United States,* 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962),

> "This Court has, in recent years, upheld many convictions in the face of questions concerning the sufficiency of the charging papers. Convictions are no longer reversed because of minor and technical deficiencies which did not prejudice the accused. [Citing cases] This has been a salutory development in the criminal law."

*Id.* at 763, 82 S.Ct. at 1046 (*quoting Smith v. United States,* 360 U.S. 1, 9, 79 S.Ct. 991, 996, 3 L.Ed.2d 1041 (1959)). Under the federal rules an indictment must:

> "be a plain, concise and definite written statement of the essential facts constituting the offense charged. It shall be signed by the attorney for the government. It need not contain a formal commencement, a formal conclusion or any other matter not necessary to such statement. Allegations made in one count may be incorporated by reference in another count. It may be alleged in a single count that the means by which the defendant committed the offense are unknown or that he committed it by one or more specified means. The indictment or information shall state for each count the official or customary citation of the statute, rule, regulation or other provision of law which the defendant is alleged therein to have violated."

Fed.R.Crim.P. 7(c)(1).

With regard to the minimum requirements of an indictment, the Seventh Circuit has stated:

> "The Fifth Amendment's guarantee of the right to indictment by a grand jury and its double jeopardy bar, and the Sixth Amendment's guarantee that a defendant be informed of the charges against him establish two minimum requirements for an indictment. The indictment must adequately apprise a defendant of the charge against him so that he can prepare his defense. Furthermore, it must establish a record that shows when the defense of double jeopardy may be available to the defendant in the event future proceedings are brought against him.... Generally, an indictment is sufficient when it sets forth the offense in the words of the statute itself, as long as those words expressly set forth all the elements necessary to constitute the offense intended to be punished."

*United States v. Hinkle,* 637 F.2d 1154, 1157 (7th Cir.1981) (citations omitted). *See also Russell v. United States,* 369 U.S. 749, 763–64, 82 S.Ct. 1038, 1046–47, 8 L.Ed.2d 240 (1962). With the foregoing as background concerning the minimum requirements of an indictment, we can now proceed to examine the defendant's contentions.

(1) The Sixth Amendment right to be adequately charged.

The defendant first contends that the indictment failed to reasonably inform him of the charges. The indictment provided in relevant part:

> "From on or about the first day of January, 1971, and continuing thereafter up to and including the date of this indictment in the Central District of Illinois and elsewhere
>
> James Michael Remaly,
>
> Richard Johnson,
>
> Jack Don Coleman,
>
> John Batton,
>
> James Thorington,
>
> Lyndell Deatheridge,
>
> David Roman,
>
> Rodney Siefken, and
>
> Anthony Carton,
>
> the defendants herein, willfully and knowingly did conspire, confederate and agree with each other and with Dennis Gene Justman, Robert Siefken, Donald Nelles, Ray Martinez, Anthony Joe Cox, Glenn Wells, Philip McNaught, William Seeyle, David Scarborough, Robert H. Behrends, and Richard Behrends, herein

named but not indicted, and with divers other persons to the Grand Jury unknown, to commit offenses against the United States, to wit, to distribute Lysergic Acid Diethylamide (hereinafter known as L.S.D.), in violation of Section 841(a)(1), Title 21 United States Code.

\* \* \* \* \* \*

"It was a further part of the conspiracy that co-conspirators Dennis Gene Justman, William Seeyle, Glen Wells, and Ray Martinez would then distribute L.S.D. to various individuals, including defendants Jack Don Coleman, John Batton, James Thorington, Lyndell Deatheridge, David Roman, Rodney Siefken, and Anthony Carton, and others, for further distribution.

\* \* \* \* \* \*

All in violation of Section 846, Title 21, United States Code."[1]

The defendant correctly points out that the Sixth Amendment provides:

"In all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation ...."

Essentially, the defendant's main contention is that the indictment was so broad, due to the expanse of time covered (January 1, 1971 to May 26, 1982) and the failure to state the exact location of the conspiracy (the indictment merely states that the conspiracy existed in the Central District of Illinois and elsewhere), that it failed to adequately inform him of the charges to enable him to prepare a defense. In support of this argument, he cites to the Ninth Circuit decision of *United States v. Cecil,* 608 F.2d 1294 (9th Cir.1979) (per curiam) wherein the court reversed a conviction due to the insufficiency of the indictment. In that case, the indictment's basic weakness was that it failed to place the conspiracy in a specific time frame; instead, it merely alleged "[t]hat beginning *on or before* July, 1975,

and continuing thereafter until *on or after* October, 1975 ...." (Emphasis added.) Although the court referred to several other deficiencies, the most important factor, according to the court, was that the alleged conspiracies were not placed "within any time frame." Obviously this is not true in the case at bar. Although the time frame of the present indictment covers eleven years and five months, there is no indication in the record that this period of time was arbitrarily chosen by the prosecution in order to ensure that the conspiracy fell somewhere within that period.

At oral argument the defendant argued that if the prosecution in *Cecil* had merely tacked five years on each end of the time frame alleged in that indictment it would have been identical to the facts of the present case. The defendant fails to recognize, however, that such an arbitrary time allegation *is not* present here. In fact, the attorney for the Government was specifically asked at oral argument whether the time frame alleged in the indictment was the length of time during which the conspiracy actually existed; she responded that it was. The fact that the conspiracy was successful should not prohibit the government from prosecuting all individuals connected with the conspiracy for the entire period of time the conspiracy existed. Yet this would be the result if the defendant's argument were successful since his main contention is that the time frame was so broad that he was unable to establish an adequate defense. The specific time period alleged in the indictment at bar distinguishes this case from the open-ended indictment in *United States v. Cecil. See United States v. Tavelman,* 650 F.2d 1133, 1137 (9th Cir.1981), *cert. denied,* 455 U.S. 939, 102 S.Ct. 1429, 71 L.Ed.2d 649 (1982) where the Ninth Circuit, the court which decided *Cecil,* distinguished *Cecil* on this very basis.

In a related contention, the defendant proposed at oral argument that in order

---

1. In addition, ten overt acts were also alleged but none of them mentioned David Roman. Note also that as originally typed, the indictment misspelled John Batten and Lyndell Deatheradge which were later corrected by hand. No claims have been made with regard to these errors.

to make the present indictment adequate the Government would have had to allege the specific time each member joined and participated in the conspiracy. In our view, such an assertion is not essential to a satisfactory conspiracy indictment under the Sixth Amendment. In *United States v. Nomura Trading Co.*, 213 F.Supp. 704 (S.D.N.Y.1963), the district court rejected a similar argument.

"As to the further contention that the conspiracy count is vague as to the moving defendant, this appears to rest on his joinder together with all other alleged co-conspirators and the lack of specification of the date when it is alleged he joined the conspiracy. The moving defendant stresses the fact that it is alleged the conspiracy commenced on September 1, 1959 and continued to the return of the indictment, May, 1962, whereas he worked for one of the corporate defendants from February, 1960 to May, 1961. *It requires no citation of authority for the proposition that one who knowingly and intentionally joins a going conspiracy, aware of its objectives, may be held, whether his role was minor or major and whether or not he knew all the alleged members of the claimed conspiracy.* The indictment upon its face meets the test set forth in *Wong Tai v. United States* [273 U.S. 77, 47 S.Ct. 300, 71 L.Ed. 545] since it sufficiently appraises the defendant of the nature of the charge against him to enable him to prepare for trial and to plead any judgment which may be rendered as a bar to further prosecution for the same offense."

*Id.* at 706 (emphasis added, footnote omitted). We concur with this reasoning.

In both of his above noted arguments the defendant fails to recognize the difference between indictments alleging conspiracies and indictments alleging substantive offenses. Many courts, including the Supreme Court, have recognized that a conspiracy indictment need not be as detailed and specific as an indictment alleging a substantive offense. In *Wong Tai v. United States*, 273 U.S. 77, 47 S.Ct. 300, 71 L.Ed. 545 (1927) the Supreme Court stated:

"It is well settled that in an indictment for conspiring to commit an offense—in which the conspiracy is the gist of the crime—it is not necessary to allege with technical precision all the elements essential to the commission of the offense which is the object of the conspiracy, . . . or to state such object with the detail which would be required in an indictment for committing the substantive offense .... In charging such a conspiracy 'certainty to a common intent, sufficient to identify the offense which the defendants conspired to commit, is all that is necessary.'"

*Id.* at 81, 47 S.Ct. at 301 (*quoting Williamson v. United States*, 207 U.S. 425, 447, 28 S.Ct. 163, 52 L.Ed. 278 (1908)). Some courts, including the Seventh Circuit, have gone even further by delineating the specific requirements of a sufficient indictment under 21 U.S.C. § 846, the statute in question in the present case. In *United States v. Sweeney*, 688 F.2d 1131 (7th Cir.1982), a recent panel of this circuit stated:

"The essential elements of conspiracy under section 846 are the existence of an agreement between two or more individuals, with the intent to commit an offense in violation of the Controlled Substance Act. Indeed, case law reveals that '*an indictment under 21 U.S.C. § 846 is sufficient if it alleges a conspiracy to distribute drugs, the time during which the conspiracy was operative and the statute allegedly violated, even if it fails to allege any specific overt act in furtherance of the conspiracy.*'"

*Id.* at 1140 (*quoting, United States v. Bermudez*, 526 F.2d 89, 94 (2d Cir.1975), *cert. denied,* 425 U.S. 970, 96 S.Ct. 2166, 48 L.Ed.2d 793 (1976)) (emphasis added). *See also United States v. Marable*, 578 F.2d 151, 154 (5th Cir.1978).

The indictment in the present case meets the requirements set forth in *United States v. Sweeney*. It alleges a conspiracy to distribute L.S.D., it alleges that such distribution violated 21 U.S.C. §§ 841(a)(1)

and 846, and also delineates the time frame within which the conspiracy existed. Thus, the indictment provided sufficient information to "adequately apprise [Roman] of the charge against him so that he [could] prepare his defense." *United States v. Hinkle,* 637 F.2d 1154, 1157 (7th Cir.1981). The present indictment, in fact, exceeds the minimum requirements in that it at least partially gives the geographic location of the conspiracy (the Central District of Illinois and elsewhere), it names a substantial number of the coconspirators including all those who ultimately testified against the defendant in the present action, and finally, it provides the defendant Roman with a description of his part in the conspiracy, i.e., he received L.S.D. from certain named individuals for further distribution.

Our conclusion that the indictment does not violate the Sixth Amendment because it adequately informed the defendant of the charges against him to allow him to prepare a defense finds support in the Eleventh Circuit's recent *United States v. Yonn,* 702 F.2d 1341 (11th Cir.1983) decision wherein that court upheld a very similar indictment.

"Against this background, the indictment here meets the test of specificity. Count II recites the essential elements of the offense charged against Sanes-Saavedra—knowingly conspiring to import a schedule I controlled substance into the United States, in violation of 21 U.S.C. §§ 952(a) and 963. It identified his alleged co-conspirators as well as the particular controlled substance. . . . The indictment also correctly set forth the time span of the conspiracy: from June 1, 1981 until the date of the indictment (November 24, 1981). . . . It further described the locale of the alleged conspiracy, at least partially, with the allegation that the criminal activity took place 'in the Northern District of Florida and elsewhere.' Taken as a whole, these allega-

tions adequately set forth the offense charged."

*Id.* at 1348 (citations and footnote omitted). Thus, we hold that the indictment did not offend the Sixth Amendment.[2]

(2) The Fifth Amendment proscription of double jeopardy.

█ The defendant next argues that the indictment was so vague that it violated the Fifth Amendment double jeopardy proscription: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb . . . ." There can be no doubt that an indictment plays a part in protecting a defendant against double jeopardy, however, the defendant's attack on the present indictment falls wide of the mark since it is the record as a whole that protects an accused from being "twice put in jeopardy of life or limb." As the Supreme Court stated in *Russell v. United States:*

"In a number of cases the Court has emphasized two of the protections which an indictment is intended to guarantee, reflected by two of the criteria by which the sufficiency of an indictment is to be measured. These criteria are, first, whether the indictment 'contains the elements of the offense intended to be charged, "and sufficiently apprises the defendant of what he must be prepared to meet," ' and, secondly, ' "in case any other proceedings are taken against him for a similar offense, whether the *record* shows with accuracy to what extent he may plead a former acquittal or conviction." *Cochran and Sayre v. United States,* 157 U.S. 286, 290 [15 S.Ct. 628, 630, 39 L.Ed. 704]; *Rosen v. United States,* 161 U.S. 29, 34 [16 S.Ct. 434, 435, 40 L.Ed. 606].' "

*Russell,* 369 U.S. at 763–64, 82 S.Ct. at 1046–47 (*quoting, Hagner v. United States,* 285 U.S. 427, 431, 52 S.Ct. 417, 419, 76 L.Ed.

---

**2.** The defendant also contends that this case is controlled by *United States v. Abrams,* 539 F.Supp. 378 (S.D.N.Y.1982). We find that case inapposite since the indictment in *Abrams* did not allege a conspiracy, rather it attempted to allege a substantive offense. As we previously

noted, an indictment alleging a conspiracy need not be as detailed as one alleging a substantive offense. *See Wong Tai v. United States,* 273 U.S. 77, 47 S.Ct. 300, 71 L.Ed. 545 (1927), and *United States v. Yonn,* 702 F.2d 1341, 1348 (11th Cir.1983).

861 (1932)) (emphasis added); *See also Wong Tai,* 273 U.S. at 81, 47 S.Ct. at 301; *United States v. Garcia-Geronimo,* 663 F.2d 738, 742 (7th Cir.1981); and *United States v. Hinkle,* 637 F.2d 1154, 1157 (7th Cir.1981). It is the record as a whole, therefore, which provides the subsequent protection from double jeopardy, rather than just the indictment since:

> "A defendant claiming that he has been subjected to double jeopardy bears the burden of establishing that both prosecutions are for the same offense.... The defendant must show that 'the evidence required to support a conviction on one indictment would have been sufficient to warrant a conviction on the other' indictment."

*United States v. West,* 670 F.2d 675, 681 (7th Cir.), *cert. denied,* 457 U.S. 1124, 1139, 102 S.Ct. 2944, 2972, 73 L.Ed.2d 1340, 1359 (1982) (*quoting, United States v. Buonomo,* 441 F.2d 922, 925 (7th Cir.), *cert. denied,* 404 U.S. 845, 92 S.Ct. 146, 30 L.Ed.2d 81 (1971)).

 Under this standard, it is obvious that the indictment is sufficient as the record established at trial would clearly bar another prosecution for the conspiracy presented in the indictment. The defendant contends, however, that he remains subject to further prosecution for the same alleged conspiracy because there is evidence in the Government's possession which was not admitted (stricken) by the trial court as it went beyond the Government's Bill of Particulars. Because such evidence exists, according to the defendant, "a court in another jurisdiction would not consider this prosecution a bar to a subsequent prosecu-

tion in their geographic area." Again the defendant's argument fails since the trial court record clearly indicates the parameters of the conspiracy prosecuted in this case and would therefore bar any further prosecution for that same conspiracy. The record identifies the participants of the conspiracy and it additionally unambiguously sets out Roman's involvement in the scheme to distribute L.S.D. Furthermore, the time period of his association and active participation in the conspiracy is part of the record. Thus, we hold that the indictment is not deficient in this regard since the record will protect Roman against any further jeopardy for the illegal conduct involved in the present case.[3]

(3) The Fifth Amendment right to indictment by a Grand Jury.

 In his final attack on the indictment, the defendant alleges that it violated the Fifth Amendment's proscription that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury ...." Specifically, the defendant relies on the district court's decision in *United States v. Abrams,* 539 F.Supp. 378 (S.D.N.Y. 1982), where that court stated:

> "Similarly, the Indictment Clause of the Fifth Amendment also requires that an indictment contain some amount of factual particularity to ensure that the prosecution will not fill in elements of its case with facts other than those considered by the grand jury."

*Id.* at 384.[4] *Abrams* is distinguishable from the present case as it involved an indict-

---

**3.** Roman again raises the issue of why the indictment did not specifically delineate when he joined the conspiracy to distribute L.S.D. For the reasons stated in the previous section concerning his Sixth Amendment attack on the indictment, and because the record adequately establishes the parameters of his involvement in the conspiracy we hold the defendant's argument to be without merit.

Roman also points out that the indictment states he conspired with those individuals named and "with divers other persons to the Grand Jury unknown." He argues that the record is no protection against a new indict-

ment charging a conspiracy with one of these heretofore "unknown" individuals. This argument is completely without merit as the record clearly establishes the parameters of the conspiracy being prosecuted. Thus, if a new participant of the "same" conspiracy is subsequently discovered the record will adequately protect Roman from further prosecution regarding that "same" conspiracy.

**4.** The defendant also relies on *United States v. Agone,* 302 F.Supp. 1258 (S.D.N.Y.1969) where the accused successfully challenged an indictment charging the substantive offense of wil-

ment which alleged a substantive offense rather than a conspiracy as in the present case. As we previously mentioned, "an indictment for a conspiracy to commit a criminal offense need not be as specific as a substantive count" in order to meet constitutional muster. *United States v. Yonn,* 702 F.2d at 1348 (*quoting United States v. Ramos,* 666 F.2d 469, 475 (11th Cir.1982)). *See also Wong Tai,* 273 U.S. at 81, 47 S.Ct. at 301. While the indictment may not have been as detailed as the defendant (or, for that matter, this court) would have desired, it did not allow Roman to be convicted "on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him," which was the concern of the Supreme Court in *Russell v. United States,* 369 U.S. 749, 770, 82 S.Ct. 1038, 1050, 8 L.Ed.2d 240 (1962). Under the indictment, the Government was required to prove a conspiracy to distribute L.S.D. between the individuals named therein, within the time period mentioned and within the delineated geographic location. Contrary to the defendant Roman's arguments, this is exactly the evidence presented to the Grand Jury and it is apparent from the face of the indictment that this is what the Grand Jury intended to charge. Specifically, with regard to Roman's involvement, evidence was presented to the Grand Jury that Roman purchased L.S.D. from Justman every two or three weeks in amounts of three to five thousand units per delivery. While greater detail was of necessity presented at trial, the underlying scenario presented to the Grand Jury is exactly the same. The Grand

Jury's indictment was not so vague that it allowed room for the prosecution to guess as to the Grand Jury's intended charge or to "fill in the gaps of proof by surmise or conjecture." *Russell,* 369 U.S. at 766, 82 S.Ct. at 1048. Furthermore, notwithstanding his arguments to the contrary, Roman was not faced with a new prosecutorial theory at every turn. Thus, we hold that the indictment likewise did not violate the Indictment Clause of the Fifth Amendment.

### B. THE TRIAL COURT'S REFUSAL TO STRIKE JUSTMAN'S AND NELLES' TESTIMONY.

Roman next argues that the trial court erred in refusing to grant his motion to strike both Justman's and Nelles' testimony concerning his participation in the conspiracy. To support this contention the defendant initially argues that the evidence was so inconsistent and confusing that under Fed. R.Evid. 611(a) the court should have excluded or struck both co-conspirators' testimony. According to Roman, neither defendant was able to testify with consistency as to the time span in which Roman was affiliated with the conspiracy nor were they able to pinpoint when deliveries of L.S.D. were made to Roman. In addition, they inconsistently testified as to the number of deliveries made. The defendant argues that the very vagueness of their testimony prevented him from conducting adequate cross-examination.

Federal Rule of Evidence 611(a)[5] does not require reversal in this

---

fully interfering, through use of threat and/or force, with the rights of a member of a labor organization to express his views, etc. The central problem of the indictment in *Agone* was that it failed to identify the victim. *Agone* is clearly distinguishable because (1) the indictment therein alleged a substantive offense, *see,* discussion *supra;* and (2) the failure to delineate the victim of threat or violence is patently different from Roman's main contention that the time span of the present indictment was too broad. With regard to this latter reason, as we have previously held, the fact that Roman joined an on-going successful conspiracy does not prevent the government from prosecuting for the entire period during which the conspiracy existed. Furthermore, the *Agone* court

noted that the identity and character of the victim is at "the very core of criminality." *Id.* at 1260 (*quoting Russell v. United States,* 369 U.S. at 764, 82 S.Ct. at 1047). Roman has not alleged nor does our review indicate that there is anything absent in the present indictment which goes to "the very core of criminality."

5. Fed.R.Evid. 611(a) provides:
 "The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment."

case since there is nothing in the record or in the appellant's brief which would indicate that the court failed to exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence. The defendant's arguments seem to be reducible to questions of credibility with regard to both Justman and Nelles. It is well settled law that a court of appeals does not stand in judgment of the credibility of witnesses. Rather, that question is left to the sound discretion of the trier of fact. *See United States v. Redwine,* 715 F.2d 315, 319 (7th Cir.1983) *(citing, Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942)). *See also United States v. Bradshaw,* 719 F.2d 907, 921 (7th Cir.1983).

 The defendant Roman next argues that the facts proved at trial varied from those provided in the Government's two Bills of Particulars.

"The purposes of a bill of particulars are to inform the defendant of the nature of the charge against him with sufficient precision to enable him to prepare for trial, to avoid or minimize the danger of surprise at time of trial and to enable him to plead his acquittal or conviction in bar of another prosecution for the same offense when the indictment itself is too vague and indefinite for such purposes."

*United States v. Haskins,* 345 F.2d 111, 114 (6th Cir.1965). As the defendant correctly admits, for a variance to require reversal the appellant must prove that he is prejudiced by that variance. *See United States v. Francisco,* 575 F.2d 815, 818 (10th Cir. 1978); *United States v. Horton,* 526 F.2d 884, 887 (5th Cir.), *cert. denied,* 429 U.S. 820, 97 S.Ct. 67, 50 L.Ed.2d 81 (1976); and *United States v. Glaze,* 313 F.2d 757, 759 (2d Cir.1963). Based on our review of the record, we conclude that there was no prejudice and therefore any variance which might have occurred does not require reversal.

The defendant points out that there was evidence presented at trial of L.S.D. deliveries in quantities greater than 4,000 units and thus in variance with the Government's Bill of Particulars. He also cites to testimony regarding deliveries made to a Clark station in *Moline,* Illinois prior to April 1, 1979 which also varied from the Government's Bill of Particulars since the Clark station where deliveries were made prior to April 1 was identified in the Bill as being located in *Rock Island,* Illinois. We are unable to understand how such evidence prejudiced the defendant. In the first instance, the trial court granted the defendant's motion to strike, and instructed the jury to disregard, all testimony concerning deliveries in quantities greater than 4,000 units of L.S.D. and all deliveries made prior to April 1, 1979.

Even assuming that such evidence had not been struck by the trial court, we would find no prejudice as we do not believe that such evidence would have surprised the defendant to such a degree that he would be unable to prepare an adequate defense. Since the charged offense was conspiring to distribute rather than the substantive offense of distributing L.S.D., disparity between four and five thousand units is of little relevance; whether the amounts actually transferred were between one thousand to four thousand units, or one thousand to five thousand units, per delivery, the inference of intent to further distribute remains intact. In addition, the Bill of Particulars indicates that the deliveries were made *to his place of employment* during the time period prior to April 1, 1979. We feel confident that the defendant knew where he worked and thus we do not believe that this inadvertent misstatement of location between Moline and Rock Island would in any way prejudice him in the preparation of his defense.

The defendant, however, asserts that prejudice can also include the danger that a variance from the Bill of Particulars might allow the defendant to be charged and convicted of the same offense a second time based on the stricken evidence. As we noted in our previous discussion, we are convinced that the record in the present case

would bar any subsequent prosecution for the conspiracy alleged in the indictment.[6]

## C. THE SUFFICIENCY OF THE EVIDENCE.

■ Roman moved for judgment of acquittal at the conclusion of the Government's case-in-chief, at the conclusion of the presentation of all evidence and again after the discharge of the jury; all his motions were denied. He initially argues that the judge applied an incorrect standard in testing the sufficiency of the evidence when ruling on Roman's motion after the Government's case-in-chief. In ruling on that first motion, the court stated, in effect, that the Government must merely establish a *prima facie* case to avoid a judgment of acquittal. We agree that this was not a correct statement of the law. However, upon thorough review of the testimony and application of the proper standard we conclude that there is more than sufficient evidence in the record to sustain the jury's verdict. Under the accepted standard:

"The rule has long been established that when ruling on a motion for acquittal the test that the court must use is

whether at the time of the motion there was relevant evidence from which the jury could reasonably find [the defendant] guilty beyond a reasonable doubt, viewing the evidence in the light most favorable to the Government ... bear[ing] in mind that 'it is the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences' .... (citations omitted)."

*United States v. Blasco,* 581 F.2d 681, 684 (7th Cir.), *cert. denied,* 439 U.S. 966, 99 S.Ct. 456, 58 L.Ed.2d 425 (1978) (*quoting United States v. Rojas,* 554 F.2d 938, 943 (9th Cir. 1977)). The Seventh Circuit subsequently reaffirmed this standard and in addition, in dicta, referred to the standard used in the Fifth Circuit:

"In the Fifth Circuit a slightly more precise, but equivalent, test has been developed. There the test of the sufficiency of proof on a motion for judgment of acquittal or review of the denial of such a motion, is whether the jury might reasonably conclude that the evidence is inconsistent with the hypothesis of the defendant's innocence. *United States v. Lonsdale,* 577 F.2d 923, 925 (5th Cir.1978). Another way of expressing the same rule is that the motion for judgment of acquittal must be granted when the evidence, viewed in the light most favorable to the government, is so scant that the jury could only speculate as to the defendant's guilt, *United States v. Herberman,* 583 F.2d 222 (5th Cir.1978), and is such that a reasonably-minded jury *must* have a reasonable doubt as to the defendant's guilt. *United States v. Stephenson,* 474 F.2d 1353, 1355 (5th Cir.1973)."

*United States v. Fearn,* 589 F.2d 1316, 1321 (7th Cir.1978) (emphasis original, footnote omitted). *See also United States v. Beck,* 615 F.2d 441, 447–48 (7th Cir.1980). This dicta in *Fearn* created confusion as to the correct standard to be applied in this circuit. That confusion was recently resolved in *United States v. Moya,* 721 F.2d 606 (7th Cir.1983) where a panel of our court held that the reasonable doubt test is "the sole test for reviewing the sufficiency of the evidence in criminal cases." *Id.* at 610 (footnote omitted). Under their formulation of the test:

"the reviewing court in a criminal case must determine 'whether after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"

*Id.* at 609 (*quoting Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d

---

**6.** The defendant also argues that as the Government failed to specify when particular deliveries of L.S.D. were made, the striking of all deliveries prior to April 1, 1979 and all deliveries in excess of 4,000 units of L.S.D. renders the remaining evidence speculative since which deliveries fall within the prior to April 1, 1979 category and which deliveries fall within the excess of 4,000 units category cannot be delineated by the Government. We address this issue in the following section concerning the sufficiency of the evidence.

560 (1979) (emphasis original)). We, therefore, apply the "reasonable doubt" test.

In the following review of the record, it should be kept in mind that circumstantial evidence plays a substantial role in conspiracy trials because of its relevance in establishing conspiracies and the general inability to obtain direct evidence of the conspiratorial agreement. As this court recently stated in *United States v. Redwine,* 715 F.2d 315 (7th Cir.1983):

> "We are also reminded that even where the government's case is, as here, primarily circumstantial, such evidence is 'as pertinent as direct evidence to the establishment of guilt or innocence.' *United States v. Cogwell,* 486 F.2d 823, 828 (7th Cir.1973), *cert. denied,* 416 U.S. 959, 94 S.Ct. 1975, 40 L.Ed.2d 310 (1974). In a case hinging on circumstantial evidence, while it is important that we not permit a verdict based solely on the piling of inference upon inference, *Anderson v. United States,* 417 U.S. 211, 94 S.Ct. 2253, 41 L.Ed.2d 20 (1974), it is also imperative that we not rend the fabric of evidence and examine each shred in isolation; rather, the reviewing court 'must use its experience with people and events in weighing the chances that the evidence correctly points to guilt against the possibility of innocent or ambiguous inference....' *United States v. Kwitek,* 467 F.2d 1222, 1226 (7th Cir.1972), *cert. denied,* 409 U.S. 1079, 93 S.Ct. 702, 34 L.Ed.2d 668 (1972). These observations are especially relevant to proof of conspiracy, the principal crime charged here. Because of the secretive character of conspiracies, direct evidence is elusive, and hence the existence and the defendant's participation can usually be established only by circumstantial evidence. *United States v. Washington,* 586 F.2d 1147, 1153 (7th Cir.1978)...."

*Id.* at 319 (citation omitted).

The question remains, however, whether we must now view the evidence as it existed immediately following the Government's case-in-chief to properly review the trial court's denial of the defendant's initial motion for judgment of acquittal, or whether we can examine the record as a whole. The Seventh Circuit answered this question in *United States v. Fearn,* wherein the court held that if the defendant does not stand on his original motion for judgment of acquittal but instead proceeds to present his defense, review on appeal is not confined to the record as it existed at the time of the motion, rather the reviewing court may examine the record as a whole.

> "Under these circumstances, where the defendant did not stand on his motion for acquittal, but introduced evidence in defense, in determining the sufficiency of the evidence, the court of appeals can examine the evidence as a whole, including that offered by the defendant."

*United States v. Fearn,* 589 F.2d at 1321. *See also United States v. Beck,* 615 F.2d at 448; and *United States v. Wetzel,* 514 F.2d 175, 177 (8th Cir.), *cert. denied,* 423 U.S. 844, 96 S.Ct. 80, 46 L.Ed.2d 65 (1975).

The defendant contends that the Government failed to establish that Roman intended to distribute a controlled substance. It is uncontested that there is no direct evidence of subsequent sales by Roman, however, the intent to distribute can and frequently is established by circumstantial evidence. Donald Nelles testified that he actually observed five to ten deliveries made to the defendant Roman. According to Nelles, these deliveries varied in quantity from 1,000 to 4,000 dosage units. These units were also referred to as "hits" which were defined in the record as individual doses of L.S.D.[7] While Roman may argue that these deliveries were for individual consumption, we find that a jury could reasonably conclude that the delivery of such large quantities clearly indicated an intent to further distribute the L.S.D. *See United*

---

**7.** Roman argues that there is no evidence as to what exactly a dosage unit was and how much L.S.D. was normally ingested by an individual at a given time. We believe that the testimony that a "hit" or dosage unit was an individual dose of L.S.D. adequately defined this term and sufficiently established the normal amount of L.S.D. ingested.

*States v. Tamargo,* 672 F.2d 887, 890 (11th Cir.), *cert. denied,* 459 U.S. 864, 103 S.Ct. 141, 74 L.Ed.2d 119 (1982); and *United States v. Fleming,* 677 F.2d 602, 609 (7th Cir.1982).

The defendant makes an even more basic argument by asserting that there is no evidence that the items delivered to him by Justman were in fact L.S.D. While no chemical analysis was ever performed on the items delivered to Roman, both Justman and Nelles identified the substance as L.S.D. In response Roman contends that neither of those individuals had direct knowledge as to the identity of the items being delivered. We hold there was more than sufficient circumstantial evidence to establish that the delivered units were L.S.D. *See United States v. Bentvena,* 319 F.2d 916, 927 (2d Cir.) *cert. denied,* 375 U.S. 940, 84 S.Ct. 345, 11 L.Ed.2d 271 (1963) (the identity of the substance as narcotics may be established by circumstantial evidence). First, both Justman and Nelles believed, according to their testimony, that the units delivered to Roman were L.S.D., a drug which they both testified to having had substantial experience with over an extended period of time. Furthermore, the price ($775.00 per thousand) and the covert nature of the transactions provide additional support that the delivered items were L.S.D. Based on the preceding evidence, and in particular the direct testimony of Justman and Nelles, we hold that there was more than sufficient evidence to support a finding that the items transferred were L.S.D.

Even if we did not find the evidence sufficient to prove the identity of the substance, we would hold that the crime of conspiracy to distribute L.S.D. was shown. What Roman fails to understand is that he was not charged with the substantive offense of distributing L.S.D., rather he was charged with conspiracy to distribute L.S.D., i.e., agreeing with one or more individuals to undertake the distribution of that drug.[8] To establish conspiracy the items believed to be L.S.D. need not in fact be L.S.D. *See United States v. Pietri,* 683 F.2d 877 (5th Cir.1982), wherein the Fifth Circuit upheld a conviction for conspiracy with intent to distribute both cocaine and methaqualone in violation of 21 U.S.C. §§ 841(a)(1) and 846, when in fact the substances actually transferred were bogus imitations of the actual drugs. As the court pointed out "[t]he crime of conspiracy is complete upon the formation of the illegal agreement. The fact that the cocaine which they thought they were receiving was a fake substance does not affect their intent to obtain the genuine article." *Id.* at 879. *See also United States v. Shively,* 715 F.2d 260, 266 (7th Cir.1983). Thus, the key element is the intent to obtain L.S.D. for further distribution and *not* whether Roman actually obtained the actual substance. We hold that such an intent is clearly established in this record.

The defendant's final argument is that the jury was left to speculate as to which deliveries remained after the trial court struck all deliveries prior to April 1, 1979 and in amounts greater than 4,000 dosage units. We find this argument without merit. Subsequent to the defendant's motion to strike all testimony regarding deliveries made before April 1, 1979, Donald Nelles was specifically questioned with respect to deliveries occurring *after that date.* He testified that he observed deliveries to the defendant Roman "between April of 1979 till roughly June of 1980" and that those deliveries were in amounts of 1,000 to 4,000 units. Then on cross-examination, Roman's own attorney solicited Nelles' testimony that he actually observed the transfer of L.S.D. from five to ten times. Additionally, Nelles testified that to his knowledge Justman had never delivered as much as five thousand "hits." This evidence alone is sufficient to support the guilty verdict. Dennis Justman also testified that deliveries were made once or twice a month from the fall of 1978 through the summer or fall of

8. Roman cites to *United States v. Crisp,* 563 F.2d 1242, 1244 (5th Cir.1977) for the proposition that the nature of the substance delivered must be proved beyond a reasonable doubt. This case is inapposite since its holding in this regard was with respect to the substantive counts charged and *not* with respect to the conspiracy count.

1980. Thus there was significant testimony that the conspiracy existed between April 1, 1979 to the middle to latter part of 1980, and that the deliveries made during the relevant time period were in quantities of one thousand to four thousand dosage units. Under 21 U.S.C. §§ 841(a)(1) and 846 the Government was required to prove that the defendant Roman was a member of a conspiracy to distribute L.S.D. in violation of the Controlled Substance Act, and that the conspiracy existed within the time period set forth in the indictment. While the time period and amounts were further limited by the Bill of Particulars, our review of the record establishes that the Government did present sufficient evidence for *any* rational trier of fact to find the defendant guilty beyond a reasonable doubt.[9]

For the foregoing reasons, we affirm the conviction.

**9.** Roman, in his briefs, makes both an argument regarding insufficiency of the evidence to support the trial court's denial of his motion for judgment of acquittal and a separate general argument concerning the sufficiency of the evidence. We believe our finding that there was sufficient evidence to support the trial court's denial of Roman's motion for judgment of acquittal also forecloses any general attack on the sufficiency of the evidence to support the verdict.