830 F.2d 194
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Isaac E. MADDEN, Petitioner-Appellant,
v.
Arthur TATE, Jr., Respondent-Appellee.
 No. 85-3061
 United States Court of Appeals, Sixth Circuit.
 September 30, 1987.
 
 Before WELLFORD, MILBURN, and DAVID A. NELSON, Circuit Judges.
 PER CURIAM.
 
 
 1
 This is an appeal from the denial of a petition for a writ of habeas corpus. An Ohio court convicted the petitioner on of three counts of rape, and he raises three issues here: (1) whether he was deprived of his liberty without due process of law because the indictment failed to specify the precise dates upon which the rapes occurred; (2) whether he was deprived of a fair trial by improper use of leading questions during examination of the minor victims; and (3) whether the evidence was insufficient to support the conviction. Concluding that each of these questions must be answered in the negative, we shall affirm the denial of the writ.
 
 
 2
 The indictment charged that the petitioner engaged in sexual conduct with another, not his spouse, who was under the age of thirteen years. It charged that such conduct occurred between June 1, 1981, and December 31, 1981, with respect to one count, and between June 1, 1981, and September 31 [sic], 1982, with respect to two other counts. (There was originally a fourth count, but it was dropped.)
 
 
 3
 Defense counsel requested a bill of particulars specifying times, places, and persons involved in each count of the indictment. The prosecution responded that the first count involved an act of vaginal intercourse with the petitioner's granddaughter, Amy Sue League, occurring in a gray house in which the petitioner once lived. The second and third counts were said to relate to acts of fellatio between the petitioner and his son, David Madden, occurring in both the gray house and a white house in which the petitioner once resided. Count four was said to refer to an act of anal intercourse involving David Madden and occurring in the gray house. Because of the age of the victims--Amy was eight years old and David was eleven at the time of trial--the prosecution was unable to assign a more specific date to any of the alleged acts.
 
 
 4
 At trial the petitioner introduced evidence establishing that he did not live at the gray house during the time period specified in the indictment. Upon motion of the prosecution, after presentation of the prosecution's case, the court allowed the indictment to be amended to conform to the evidence.
 
 
 5
 The district court accurately summarized the evidence presented at trial as follows:
 
 
 6
 'David Matthew Madden testified that on several occasions his father placed his genitals in David's mouth when no one else was at home. He remembered having some 'white sticky stuff' in his mouth. Amy League testified that her parents and her grandmother were at church when her grandfather placed 'his thing' between her legs and inside her, hurting her. He promised her candy if she would permit this. She stated that her grandfather had attempted to get her to touch his genitals on several occasions, but that she had refused. Defense counsel attempted to impeach her with prior testimony. Although she remembered testifying, she could not recall her answers to specific questions.
 
 
 7
 Robert Lambert testified that he had conducted a polygraph examination of petitioner five days before trial. When asked questions relevant to the charges, petitioner denied engaging in sexual conduct with David or Amy. It was Mr. Lambert's opinion that the petitioner had had a deceptive reaction on all questions. Mr. Lambert also testified that he had taken into account the fact that petitioner might be nervous or upset about the charges and forthcoming trial.
 
 
 8
 Tim Wilson, a Warren County Sheriff's Deputy, had questioned petitioner subsequent to his arrest. Petitioner told him that he had never forced the children to have sex, but rather, they initiated it themselves. For example, petitioner stated that he would awaken at times with his son naked on top of him or with his genitals in the boy's mouth. He denied having intercourse with Amy, but stated that on several occasions she would ask if she could touch his genitals. Petitioner admitted that he had exposed himself to the children on several occasions and stated, 'I know I've got a problem, and I need help.' He often gave the children candy and told them that their mothers would punish them if they said anything.
 
 
 9
 . . . [Five witnesses] who had each known petitioner in excess of ten years, were called as character witnesses. Each testified that petitioner had a reputation in the community for truthfulness and honesty, and that he had a good relationship with his son.
 
 
 10
 Virginia Madden, petitioner's wife, testified that she had seen six year old Amy League make sexual advances on her son, David Matthew, wanting David to pretend they were married. Her husband had told her on two occasions that he had awakened to find David touching his genitals. Both Mr. and Mrs. Madden punished the boy for this behavior.
 
 
 11
 Mrs. Madden denied her husband's involvement in the offenses. She related that her son-in-law Mike League had come to her home one evening and approached her about having petitioner arrested for mistreatment of Amy and David Matthew. She intimated that Mike had been angry that his family had been asked to leave the Madden home some two years earlier, and that perhaps he had fabricated the story for that reason. She stated that Amy had denied having sexual contact with her grandfather, and that Mike League had told Amy and David Matthew what to say to the police.
 
 
 12
 Petitioner also stated that Amy often 'picked on' David Matthew, making sexual advances on him. He told of twice being awakened by his son touching his gentials, (sic) for which he punished the boy. He denied any sexual contact with Amy League. He stated that when he was arrested and questioned by Deputy Wilson, he attempted to tell him what had happened, but that the deputy would not listen to him.
 
 
 13
 In rebuttal, the state called Charles Smith, a protective services case worker for the Warren County Children's Services. He was assigned as case worker to David Matthew Madden. He testified that Virginia Madden told him that David Matthew had said that his father put him in bed and made him perform sexual acts. She stated that she had also known about the incident with Amy League for approximately one year. Later, in the month preceding trial, she informed Mr. Smith that her husband was innocent and that the children were telling lies.'
 
 
 14
 The jury found the petitioner guilty of three counts of rape, and the Ohio Court of Appeals upheld the conviction. The Supreme Court of Ohio dismissed the petitioner's appeal to that court. This habeas corpus proceeding followed.
 
 I. Lack of Specific Dates
 
 15
 To the extent that the petitioner is challenging the sufficiency of the indictment under state law, as the district court held, the challenge may not be entertained in a habeas corpus proceeding. See Burrows v. Engle, 545 F.2d 552, 553 (6th Cir. 1976). The petitioner argues, however, that the indictment failed to provide him sufficient notice of the charges to enable him to prepare his defense, and this claim is cognizable in a federal habeas corpus case.
 
 
 16
 'The law is well settled that the federal guarantee of a grand jury indictment has not been applied to the states. Branzburg v. Hayes, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972). It is also well settled in this Circuit that the Constitution does not require any particular state indictment rule. In fact, it does not require an indictment at all if sufficient notice of the charges is given in some other manner. Combs v. Tennessee, 530 F.2d 695 (6th Cir.), cert. denied, 425 U.S. 954, 96 S.Ct. 1731, 48 L.Ed.2d 198 (1976).
 
 
 17
 The due process clause of the Fourteenth Amendment mandates that whatever charging method the state employs must give the criminal defendant fair notice of the charges against him to permit adequate preparation of his defense. See, e.g., In Re Ruffalo, 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968); Blake v. Morford, 563 F.2d 248 (6th Cir. 1977); Watson v. Jago, 558 F.2d 330, 338 (6th Cir. 1977). This requires that the offense be described with some precision and certainty so as to apprise the accused of the crime with which he stands charged. Such definiteness and certainty are required as will enable a presumptively innocent man to prepare for trial. Combs v. Tennessee, 538 F.2d at 698.'
 
 
 18
 Koontz v. Glossa, 731 F.2d 365, 369 (6th Cir. 1984).
 
 
 19
 Failure to specify the precise dates upon which the alleged crimes occurred does not deprive the defendant of his constitutional right to due process where time is not of the essence of the offense and where the dates used are not picked arbitrarily. See, e.g. United States v. Roman, 728 F.2d 846 (7th Cir.), cert. denied, 466 U.S. 977 (1984); United States v. Hultgren, 713 F.2d 79 (5th Cir. 1983); United States v. McCown, 711 F.2d 1441 (9th Cir. 1983); United States v. Morris, 700 F.2d 427 (1st Cir.), cert. denied, 461 U.S. 947 (1983).
 
 
 20
 Time is not of the essence of the offense charged in this case. See State v. Gingell, 7 Ohio App.3d 364, 455 N.E.2d 1066 (1982). Moreover, the petitioner has not shown that his defense was prejudiced by failure to provide more specific times. Neither is this a case where the prosecution deliberately refused to provide dates; the young victims were not in fact able to provide dates, and the time frames provided were based upon their best recollections. There was no denial of due process.
 
 II. Leading Questions
 
 21
 The petitioner next contends that he was deprived of a fair trial by the prosecution's use of leading questions in eliciting testimony from the victims. Ohio grants the trial court discretion to permit the state to ask leading questions of its own witnesses. See Ohio Rule of Evidence 611(C); State v. Holt, 17 Ohio St.2d 81, 246 N.E.2d 365 (1969). We see no violation of the federal Constitution in this. The leading questions were not unduly suggestive, and the petitioner had the opportunity to cross-examine the witnesses thoroughly. The petitioner was not deprive of a fair trial.
 
 III. Sufficiency of the Evidence
 
 22
 Finally, the petitioner contends that the evidence was insufficient to support the conviction. The question thus presented is 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis by court). The federal habeas court is not to make its own credibility determinations; credibility conflicts must be resolved in favor of the prosecution. Walker v. Engle, 703 F.2d 959, 969-970 (6th Cir.), cert. denied sub nom., Walker v. Marshall, 464 U.S. 962 (1983).
 
 
 23
 When the credibility questions in this case are resolved in favor of the prosecution, we believe there is more than sufficient evidence for a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt.
 
 
 24
 The judgment of the district court is AFFIRMED.