**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Clyde J. PIETRI and Muncy G. McAlister, Defendants-Appellants.**

**No. 81–3624
Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Aug. 11, 1982.
Rehearing Denied Sept. 17, 1982.

Sam D'Amico, Baton Rouge, La., for Pietri.

Lewis Unglesby, Baton Rouge, La., for McAlister.

Stanford O. Bardwell, Jr., U. S. Atty., Richard S. Thomas, Asst. U. S. Atty., Baton Rouge, La., for plaintiff-appellee.

Before GEE, RUBIN and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Appellants Pietri and McAlister were charged with conspiracy with intent to distribute cocaine and methaqualone ("quaaludes") in violation of 21 U.S.C. § 841(a)(1) and § 846. McAlister was also charged with four counts of using a communications facility (telephone) to facilitate the commission of a felony in violation of 21 U.S.C. § 843(b) and one count of violation of the Travel Act, 18 U.S.C. § 1952(a)(3) for travel between Jackson, Mississippi, and Baton Rouge, Louisiana, in furtherance of the conspiracy. In addition to the basic charge of conspiracy in which Pietri was joined with McAlister as co-conspirators, Pietri was charged with one count of using a communications facility (telephone) to facilitate the commission of a felony in violation of 21 U.S.C. § 843(b), one count of violation of the Travel Act for the same trip in which McAlister was involved, and one count of carrying a firearm during the commission of a felony in violation of 18 U.S.C. § 924(c)(2). Both defendants were convicted on all counts under which they were

severally and jointly charged, and they appeal.

## Swapping Fake Drugs for Fake Drugs

Appellants McAlister and Pietri became involved in negotiations with an undercover agent of the Drug Enforcement Administration, Fred C. Ball, acting as a narcotics buyer. After a period of negotiations, the evidence viewed most favorably to the government, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), reveals that an agreement was reached for McAlister and Pietri to trade 47,000 quaaludes for a certain amount of cocaine and an additional sum of $7,200.

Appellants argue that there was never any agreement for a trade, nor was there ever any fixed deal. At the time of the arrest the parties had completed a preliminary meeting at which McAlister and Pietri only had 43,000 purported quaaludes, and agent Ball supplied only a small sample of purported cocaine to be tested. It was agreed at that time, according to the record, that the full trade would take place the next day.

The critical point upon which McAlister and Pietri rest their case is the fact that the quaaludes were fakes and, under testing, revealed that they were not a controlled substance, and the purported cocaine furnished by agent Ball was also fake, and not a controlled substance. Thus, no narcotics were handled or supplied or possessed by either the purported dealers, McAlister and Pietri, on the one hand, or the undercover agent Ball on the other. McAlister and Pietri nevertheless were arrested and charged at the end of this preliminary meeting at which narcotics were purported to have been traded but no trade of narcotics took place. The bogus quaaludes were such an excellent imitation that narcotics agent Ball, who has been intensely involved in the business for ten years, felt that they were the genuine article. On the other side, it is the policy of the DEA not to supply actual narcotics in such a situation and their imitation cocaine was supplied in accordance with their regular policy.

## Can the Conspiracy be Real?

These facts leave us with the question of whether defendants can be found guilty of a conspiracy to possess and distribute narcotics when actually no narcotics were involved on either side of the critical transaction because each side supplied fake imitations of the real narcotics. The jury found McAlister and Pietri guilty of the conspiracy charged, and we uphold the conviction.

■ We have held that an individual charged with possession or sale of a controlled substance cannot be convicted if the substance is shown to be a fake imitation and not actually the controlled substance. *United States v. Bobo*, 586 F.2d 355, 371 (5th Cir. 1978), *cert. denied*, 440 U.S. 976, 99 S.Ct. 1546, 59 L.Ed.2d 795 (1979). But in this case appellants were not charged with the actual possession of controlled substances but rather a conspiracy to possess and distribute controlled substances. The evidence before the jury was ample to establish that there was such a conspiracy. This is true both with respect to quaaludes and with respect to cocaine. There is testimony in the record which shows that even after arrest McAlister and Pietri asserted that the quaaludes were genuine and had been obtained from a narcotics dealer. As far as the evidence shows, defendants *intended* to possess quaaludes for purposes of distribution, and they had been duped by the dealer who supplied the bogus quaaludes.

■ Certainly the evidence is very clear that McAlister and Pietri *intended* to obtain cocaine with intent to distribute. They were planning and conspiring to obtain approximately $45,000 worth of cocaine in exchange for quaaludes and cash and to possess and distribute the cocaine. These facts establish the requirements of the offense of conspiracy. The crime of conspiracy is complete upon the formation of the illegal agreement. The fact that the cocaine which they thought they were receiving was a fake substance does not affect their intent to obtain the genuine article. *Unit-*

ed States v. Dunbar, 590 F.2d 1340 (5th Cir. 1979).

Appellants undertake to rely upon three cases, but they are not controlling. In *United States v. Oviedo*, 525 F.2d 881 (5th Cir. 1976), we said that it made no difference whether the purported seller of the narcotics Oviedo believed they were genuine or fake in a case where the substance actually was fake. But Oviedo was charged with selling a controlled substance not a conspiracy to possess and distribute. In fact he did not sell a controlled substance, so proof of the charged crime failed.

*United States v. Rey*, 641 F.2d 222, 227 (5th Cir. 1981), was another case in which the defendant was charged with the possession of drugs but actually what he had in his possession were bogus drugs. Here again the crime charged was actual possession, not a conspiracy to possess.

In *United States v. Binetti*, 552 F.2d 1141 (5th Cir. 1977), we simply held that Binetti's knowledge that his associates were selling cocaine prior to the transaction he was involved in was not sufficient to sustain his conviction of conspiracy to possess and distribute cocaine when the substance which he sold actually was not cocaine. Here the appellants believed they were engaged in a trading transaction involving genuine controlled substances.

■ Finally, a matter not raised by appellants deserves brief mention. Defendants were charged with overt acts in furthering the conspiracy. The telephone calls, the travel, and the meeting with agent Ball were such overt acts. The fact that the exchange did not involve any controlled substance is irrelevant when the intent to deal in controlled substances was proved. *United States v. Dunbar, supra*, 590 F.2d at 1343; *Poliafico v. United States*, 237 F.2d 97, 105 (6th Cir. 1956), *cert. denied*, 352 U.S. 1025, 77 S.Ct. 590, 1 L.Ed.2d 597 (1957). In any event it is clear that proof of an overt act is not necessary to establish a conspiracy under Section 846. *Cacace v. United States*, 590 F.2d 1339, 1340 (5th Cir. 1979).

Viewing the evidence most favorably to the government, we conclude there is ample evidence in the record to support the jury verdict that defendants McAlister and Pietri conspired to deal in genuine quaaludes and cocaine. *See United States v. Ayala*, 643 F.2d 244, 248 (5th Cir. 1981).

### Conspiracy Proved, Other Charged Offenses Follow

■ McAlister and Pietri appeal their convictions for facilitating the conspiracy by the use of a communications facility and by interstate travel on the ground that since there was no unlawful conspiracy there could not be any violation of law in the use of the telephone and the travel. They would, of course, prevail in such contentions if the conspiracy count failed. But having upheld their conviction under the conspiracy count, and finding ample evidence in the record to support the counts on the use of a communications facility and the travel between Jackson and Baton Rouge, their convictions on those counts must also be upheld.

■ Finally, Pietri challenges his conviction for carrying a weapon in the commission of a felony on the same ground that no felony was committed. Having found that the conspiracy felony was committed, the carrying by Pietri of a .38 calibre Smith & Wesson revolver concealed in his pant leg at the time he and his co-conspirator met with agent Ball amply supports the conviction on that count of the indictment.

We find that the evidence supports the conviction of both defendants on all counts of the indictment under which they were charged.

AFFIRMED.