**Lonnie Ray STEWART, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 684–85.

Court of Criminal Appeals of Texas, En Banc.

Oct. 22, 1986.

Bobbi Blackwell, Connie B. Williams, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty. and Winston E. Cochran and Tommy Proctor, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

Before the court en banc.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

W.C. DAVIS, Judge.

A jury convicted appellant of delivery of a controlled substance and assessed punishment at confinement for 25 years. The Court of Appeals affirmed the conviction. *Stewart v. State,* 693 S.W.2d 11 (Tex.App. —Hous. [14th] 1985). We granted appellant's petition for discretionary review to address his contention that the evidence is not sufficient to support a conviction for delivery by offer to sell where the substance offered was not a controlled substance.

On February 5, 1982, appellant approached Houston undercover police officers W.C. Pudifin and D.C. Duke in Rachel's Lounge, a bar known as a place for drug dealing. Pudifin asked appellant if he "got anything." Appellant replied that he had some heroin, a hundred dollar bag. Appellant showed the officers a brown powdery substance that they believed was heroin. Pudifin paid appellant $100 and received the substance. Appellant was later arrested.

The substance was tested and found not to be heroin. The officers did not know what it was. But, they testified that it was not a controlled substance. Pudifin also testified that a hundred dollar bag is a small quantity, a little over a gram. The substance appellant sold Pudifin weighed one gram.

Appellant was charged under V.A.C.S., Art. 4476-15, §§ 4.03 and 1.02(8) with delivery of a controlled substance by offer to sell.[1] Appellant contends that because the substance delivered was not a controlled

---

1. Sec. 4.03(a) [currently § 4.031] states:

Except as authorized by this Act, a person commits an offense if he knowingly or intentionally manufactures, delivers, or possesses with intent to manufacture or deliver a controlled substance listed in Penalty Group 1.

Sec. 1.02(8) as effective at the time appellant was prosecuted stated:

'Deliver' or 'delivery' means the actual or constructive transfer from one person to another of

a controlled substance or drug paraphernalia, whether or not there is an agency relationship. For purposes of this Act, *it also includes an offer to sell a controlled substance* or drug paraphernalia. Proof of an offer to sell must be corroborated by a person other than the offeree or by evidence other than a statement of the offeree. (Emphasis added).

substance the evidence is insufficient to support his conviction. Appellant argues that the enactment, in September 1983, of Art. 4476–15b, entitled "Simulated Controlled Substances," shows that the legislature intended that the Controlled Substances Act cover behavior involving controlled substances and not cover acts involving simulated controlled substances.

Art. 4476–15b, § 1 states:

(2) 'Deliver' or 'delivery' means the actual or constructive transfer from one person to another of a simulated controlled substance, whether or not there is an agency relationship. For the purposes of this Act, it also includes an offer to sell a simulated controlled substance. Proof of an offer to sell must be corroborated by a person other than the offeree or by evidence other than a statement of the offeree.

(4) 'Simulated controlled substance' means a substance that is purported to be a controlled substance, but is chemically different from the controlled substance it is purported to be.

Sec. 2(a) states in part:

A person commits an offense if the person knowingly or intentionally manufactures with the intent to deliver or delivers a simulated controlled substance and the person:

(1) expressly represents the substance to be a controlled substance;

(2) represents the substance to be a controlled substance in a manner that would lead a reasonable person to believe that the substance is a controlled substance; or

(3) states to the person receiving or intended to receive the simulated controlled substance that the person may successfully represent the substance to be a controlled substance to a third party.

The elements of an offense under § 4.03 are (1) a person (2) knowingly or intentionally (3) delivers (4) a controlled substance. Under § 4.03 when delivery is by actual or constructive transfer the substance must be proved, usually by its chemical properties, to be a controlled substance. However, when delivery is by offer to sell no transfer need take place. A defendant need not even have any controlled substance. All he need do, as appellant did, is state that he had a hundred dollar bag of heroin he would sell to the officers.[2] The offense is complete when, by words or deed, a person knowingly or intentionally *offers* to sell what he states is a controlled substance. Therefore, the fact that the substance is later found not to be a controlled substance does not render the evidence insufficient to prove the offense of delivery by offer to sell a controlled substance. The element of "controlled substance" is proved by appellant's statement offering to sell heroin.

In order to commit an offense under art. 4476–15b, (1) a person must (2) knowingly or intentionally (3) deliver (4) a simulated controlled substance; and (5) must expressly represent the substance to be a controlled substance and (6) represent the substance to be a controlled substance in a manner that would lead a reasonable person to believe that the substance is a controlled substance; or (7) state to the person receiving or intended to receive the simulated controlled substance that the person may successfully represent the substance to be a controlled substance to a third party. Under art. 4476–15b, as with § 4.03, where delivery is by actual or constructive transfer, in order to be an element of the offense, the substance must be, by its chemical properties a simulated controlled substance, usually determined by analysis of its chemical properties. In order to commit the offense of delivery by offer to sell, a person would have to offer to sell "a simulated controlled substance" and yet also represent the substance to be a controlled substance so that a reasonable person would believe it to be a controlled

2. We recognize that had appellant not stated or shown any amount, prosecution under § 4.03 might well be impossible. Such a case is not before us. We do not address speculative instances.

substance. If a person offers to sell what they state is a simulated controlled substance obviously he cannot also meet the elements (5) and (6) listed above, representing it to be a controlled substance. Thus, it would seem to be an impossibility to commit the offense of delivery by offer to sell under art. 4476–15b, § 2(a)(1), (2). However, it might be possible to commit such offense under art. 4476–15b, § 2(a)(3). Under this provision if a person offered to sell what they told the buyer was a simulated controlled substance and told the buyer that he could represent the substance as a controlled substance to a third party, that person could be guilty of offering to sell a simulated controlled substance. But, if, as in the instant case, appellant intentionally or knowingly offers to sell a *controlled substance* the provisions for offer to sell under art. 4476–15b would not apply, even if the law had been in effect at the time. The fact that the substance is found to be a simulated controlled substance goes to negate intent. It is a defense.

■ The elements "controlled substance" and "simulated controlled substance" must be proved in a prosecution under the respective statutes. When actual or constructive delivery is involved the nature of the substance, usually determined by chemical analysis, is thus necessary of proof. When the prosecution involves delivery "by offer to sell" that element can be met by the representation, by word or deed, that the person has a controlled substance to sell. The chemical properties or indeed, the presence or possession of any substance is not necessary to the offense. In the instant case the offense was complete when appellant stated that he had a hundred dollar bag of heroin to sell. He named a "controlled substance" in his offer and the offense was complete. Cf. *United States v. Roman,* 728 F.2d 846, 859–860 (7th Cir.1984) where the court noted that the defendant was

charged with conspiracy to distribute L.S.D. and not with distribution of L.S.D. so that the identity of the substance did not matter; cf. *United States v. Pietri,* 683 F.2d 877 (5th Cir.1982).

In sum, the subsequent enactment of art. 4476–15b does not affect appellant's conviction. The State proved all of the elements necessary to show commission of the offense of delivery by offer to sell of heroin under art. 4476–15, § 4.03. We need not decide whether, under the evidence which shows delivery by actual transfer of a simulated controlled substance under art. 4476–15b, appellant could have been prosecuted for a first degree felony offense under the Controlled Substances Act for delivery by offer to sell, if the Simulated Controlled Substances Act had been in effect at the time. The contention is overruled and the judgment of the Court of Appeals is affirmed.

CLINTON, Judge, dissenting.

Without any consideration of the opinion of the Houston [14th] Court of Appeals and the reason for its decision, the majority finds:

"The offense is complete when, by words or deed, a person *offers* to sell what he states is a controlled substance. Therefore, the fact that the substance is later found not to be a controlled substance does not render the evidence insufficient to prove the offense of delivery by offer to sell a controlled substance. The element of controlled substance is proved by appellant's statement offering to sell heroin." [1]

That analysis is wrong. It dispenses with requisite culpable mental states of intentionally and knowingly demanded by the statute. Article 4475–15, §§ 4.03, 4.031, 4.032, 4.044 and 4.05. *Stewart v. State,* 693 S.W.2d 11 (Tex.App.—Houston [14th] 1985).[2] Such a strained construction

1. Emphasis is in majority opinion; all other emphasis is mine throughout unless otherwise indicated.

2. In the opinion below a majority found Article 4476–15b proscribes an offer to sell a controlled substance that is really a simulated controlled substance when conduct of accused shows he *knows* it is simulated. Nevertheless, it was sat-

of those sections coupled with § 1.02(8) is without precedent in this jurisdiction.[3] It is contrary to what little authority there is.[4] The majority fails to take into account legislative design and purpose pursuant to the Code Construction Act.[5]

3. isfied that "the Texas Legislature delineated as a separate offense an 'offer to sell' an enumerated drug," and that proof of such offense does not require the subject of that offer be a genuine controlled substance. Rather, the majority held the evidence must show that an accused

"(1) verbalized his intention to transfer a controlled substance in return for a fee and (2) exhibited conduct consistent with the *subjective belief* that the substance offered for sale was a controlled drug."

*Stewart v. State,* supra, at 14. Today the majority of this Court would have it that just the first element alone is sufficient to constitute an offense—in this cause a first degree felony. It cites no direct authority for that startling proposition, and ironically that which it directs the reader to compare *does* require the second—as will be demonstrated *post,* at note 3.

3. Neither federal case cited in the majority opinion involved an offer to sell a controlled substance, which apparently is not an offense *eo nomine* under federal law. See 21 U.S.C.A. § 841 et seq. Both cases treat conspiracy to distribute a controlled substance, that is, "agreeing with one or more individuals to undertake the distribution of ... items *believed* to be L.S.D. [though they] need not in fact be L.S.D.," *United States v. Roman,* 728 F.2d 846, 859 (CA7 1984); since the crime of conspiracy is complete upon formation of an illegal agreement, it is enough to show that the parties *"intended* to possess quaaludes for purposes of distribution" and in exchange *"intended* to obtain cocaine with intent to distribute [emphasis in original opinion]," *United States v. Pietri,* 683 F.2d 877, 879 (CA5 1982): "Here the appellants *believed* they were engaging in a trading transaction involving genuine controlled substances," *id.,* at 880. Thus, the *mens rea* of conspirators in each federal case contemplated obtaining and distributing *genuine* controlled substances—not a simulated or counterfeit substance, as here.

Completely ignored by the majority, the Houston [14th] Court of Appeals used a similar rationale in finding the evidence sufficient. *Stewart v. State,* supra, at 14–15; see note 2, *ante.*

4. In *Lewis v. State,* 503 S.W.2d 806 (Tex.Cr.App. 1974), accused represented to an undercover agent that the substance being sold was L.S.D., but on trial claimed that under circumstances in which he acquired it he believed the substance was a combination of Comet washing powder and Kool-Aid and, therefore, he did not intend to sell L.S.D. However, the Court rejected his contention that the State "failed to prove *intent* to sell [a controlled substance]," relying on a finding in *Reyes v. State,* 480 S.W.2d 373 (Tex. Cr.App.1972), *viz:*

"Where the accused has represented he is selling a certain narcotic drug and the substance which he sells *is found to contain such narcotic drug,* knowledge has been shown." However, when the substance actually delivered is not what it was represented to be, and the only other objective facts are the representation itself and possession elsewhere of the same simulated or counterfeit substance, a federal conviction on a theory of attempted delivery is not sustainable because there is not a "strong objective basis for the determination of *criminal intent* and conduct consistent and supportive of that intent." *United States v. Oviedo,* 525 F.2d 881, 885 (CA5 1976).

5. The Legislature first denounced acts and conduct involving certain controlled substances in Acts 1905, 29th Leg., Ch. 45, p. 45; in the Uniform Narcotic Drug Act, former article 725b, enacted in 1937, the related offense was to "sell ... any narcotic drug," and "sale" included "barter, exchange, or gift, or offer thereof," *id.,* § 1(10). Similarly, in the Texas Controlled Substances Act of 1973, "delivery" includes "an offer to sell a controlled substance." Article 4476–15, § 1.02(8).

The majority opinion below finds the issue it addressed presents a case of first impression in Texas. Which is to say, in more than eighty years our courts were not called on to decide whether a sale, offer to sell or other delivery of what is represented to be—but turns out *not* to be—a particular controlled substance offended existing law. That lack of decision, in turn, must reflect a common understanding among participants in the criminal justice system that dealing in placebos was not then a penal offense. Compare *Lewis v. State* and *Reyes v. State,* supra.

Accordingly, in 1983 the Legislature enacted Article 4476–15b, V.A.C.S., relating to "simulated controlled substances," and then in 1985 for good measure added to "fraud offenses" in Article 4476–15, § 4.09(a): "(6) to manufacture, deliver, or possess with intent to deliver a counterfeit substance." The former is a third degree felony; the latter is a Class A misdemeanor. That accused believed it to be a controlled substance is not a defense. See § 2(c) and § 4.09(c).

In his dissenting opinion Chief Justice J. Curtiss Brown concludes that by enacting Article 4476–15b, "the legislature intended to cover certain behavior which had previously been excluded from the Controlled Substances Act." *Stewart v. State,* 693 S.W.2d 11, 16 (Tex.App.—Houston [14th] 1985). While I would say both recent enactments reached conduct which had not previously been included in the Controlled Sub-

Furthermore, if a bare offer to sell a purported controlled substance is enough to constitute an offense, what punishment is affixed to that offense? The quantity is of no moment under Article 4476–15b and Article 4476–15, § 4.09(a)(6) and (b)(4), but it is in Article 4476–15, §§ 4.03, 4.031, 4.032, 4.044 and 4.05(b), (c) and (d), especially the aggravated offenses. *Tovar v. State*, 612 S.W.2d 616, 618 (Tex.Cr.App. 1981). When a cautious person makes a mere offer to sell without exhibiting or mentioning a definite amount or weight of the purported substance, how does one determine the range of punishment? Creating that kind of uncertainty in the law of controlled substances flouts objectives of the penal code stated in § 1.02(2) and (3).

Not only does the majority opinion of this Court give a novel construction to Article 4476–15, §§ 4.03 and 1.02(8), but also it misconstrues Article 4476–15b to mean that when there is an offer to sell a controlled substance the provisions of the latter "would not apply"—notwithstanding § 2(a)(1) makes it an offense where a person may believe and "expressly represents the substance to be a controlled substance" in his offer to sell what is really "a simulated controlled substance." [6]

The interpretation by the majority is at odds with a legislative determination that offering to sell a purported controlled substance that *is* "simulated" or "counterfeit" be either a third degree felony or Class A misdemeanor, instead of a first degree felony as in the instant cause.

Finally, I believe the majority formulation may well be on a collision course with

penalties attached to offenses denounced by Article 4476–15b and by Article 4476–15, § 4.09(a)(6) and (b)(4). Under the doctrine followed by the Court in *Ex parte Sanford*, 163 Tex.Cr.R. 16, 289 S.W.2d 776, 780 (1956), the majority puts all three statutes at risk of being held unconstitutional.

For those reasons I respectfully dissent.

TEAGUE, MILLER and CAMPBELL, JJ., join.

---

stances Act and its predecessors, manifestly his finding of legislative intent is correct.

**6.** At pages 288–89 of its opinion the majority seems to read § 2(a)—"delivers a simulated controlled substance"—to embrace an offer to sell what is then and there declared to be "a simulated controlled substance." However, that notion is belied by what follows in (1) and (2)—and perhaps (3)—§ 2(c) and § 3. Clearly the offer must be to sell what is in the fashion prescribed represented to be a genuine controlled substance. See *Holliman v. State*, 692 S.W.2d 120, 122 (Tex.App.—Waco 1985) PDR refused. An offer to sell an admittedly simulated or counter-

feit substance is not likely to get any taker unless the latter expects to deceive yet another party.

In that connection, the majority erroneously reads § 2(a)(1) and (2) conjunctively when under normal rules of grammar and punctuation they are stated disjunctively by reason of the "or" following (2). Thus, there are three separate representations, each of which may constitute an offense when the substance is actually simulated.

Article 4476–15, § 4.09(a)(6), dealing with an offer to sell a counterfeit substance, is not mentioned at all by the majority.