2) Caption, civil cases











COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS






DONALD EARL GRAY,


 Appellant,


v.


THE STATE OF TEXAS,


 Appellee.
§


 


§


 


§


 


§


 


§


 


 § 


No. 08-01-00422-CR



Appeal from the


363rd District Court


of Dallas County, Texas 


(TC# F-0151370-UW) 



M E M O R A N D U M O P I N I O N


 Appellant, Donald Earl Gray, found himself invited to participate in a drug deal by
a Dallas undercover police officer. Though his participation was peripheral, he also found
himself convicted of unlawful delivery of a controlled substance, crack cocaine. The court
sentenced Gray to ten (10) years' imprisonment and fined him $2500. In three issues, he
attacks the legal and factual sufficiency of the jury findings of delivery, and argues the
evidence is insufficient to support the finding he was a party to delivery. We affirm.



I

 Gray and George Bailey were walking up the stairs of an apartment complex when
they encountered undercover agent Mark Underwood. Underwood initially asked whether
the two were going upstairs; Gray responded yes. Gray asked Underwood "What do you
need?" Underwood replied to Gray, asking "can you hook me up" with some " twenties." 
Bailey asked Underwood if he was a cop. Underwood said no. And Gray said "He is cool." 
The trio proceed to apartment 313 at the Dickason address. 

 Underwood frequently worked undercover around the Dickason street complex. Just
minutes before Underwood had been to apartment 313 but was rebuffed by the occupant
Samantha McClinton when he tried to buy drugs. When the trio returned Bailey knocked on
the door and McClinton asked Bailey if he knew Underwood, Bailey said he was cool. 
Inside, Bailey took three baggies off the kitchen counter and offered them to Underwood. 
Underwood refused saying he needed five rocks. (1) When Bailey handled the three rocks,
Gray was standing two feet away. Then Bailey and Gray went to the back bedroom and
returned with five rocks. Bailey was paid with a $100 bill and departed. Gray was arrested
after he left the apartment and was walking toward a parked vehicle. Gray had no drugs,
weapons, or money on him. When Bailey and McClinton were arrested, more drugs and
weapons were found. 

 The State's chemist testified the package purchased by Underwood contained 1.06
grams of cocaine. The other drugs confiscated varied between two reports as being 4.9
grams or 7.89 grams. The State further bolstered their case by having an expert detective
testify that both Bailey and Gray were involved in the narcotics transaction. (2) The expert
opined "each of them played a role." 

 II

 In reviewing legal sufficiency, the courts look at all of the evidence in the light most
favorable to the prosecution to determine whether any rational trier of fact could have found
the essential elements of the offense beyond a reasonable doubt. Vasquez v. State, 67 S.W.3d
229 (Tex. Crim. App. 2002) (citing Jackson, 443 U.S. 307, 318, 99 S.Ct. 2781, 2789, 61
L.Ed.2d 560, 573 (1979)). Legally sufficient evidence supporting a conviction exists if the
court, after reviewing the evidence in the light most favorable to the prosecution, determines
that a rational trier of fact could have found the essential elements of the offense beyond a
reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318, 99 S.Ct. 2781, 2789, 61 L.Ed.2d
560, 573 (1979). 

 In determining the factual sufficiency of the elements of an offense, the reviewing
court "views all the evidence . . . in a neutral light, and sets aside the verdict only if it is so
contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." 
Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000) (citing Clewis v. State, 922 S.W.2d
126, 129 (Tex. Crim. App. 1996)). The court reviews the evidence weighed by the jury that
tends to prove the existence of the elemental fact in dispute and compares it with the
evidence that tends to disprove that fact. Id. We are authorized to disagree with the fact
finder's determination. Id. (citing Clewis, 922 S.W.2d at 133). This review, however, must
employ appropriate deference to prevent an appellate court from substituting its judgment
for that of the fact finder, and any evaluation should not substantially intrude upon the fact
finder's role as the sole judge of the weight and credibility given to witness testimony. Jones
v. State, 944 S.W.2d 642, 648 (Tex. Crim. App. 1996). The complete and correct standard
a reviewing court must follow to conduct a Clewis factual sufficiency review of the elements
of a criminal offense, asks whether a neutral review of all the evidence, both for and against
the finding, demonstrates that the proof of guilt is so obviously weak as to undermine
confidence in the jury's determination, or the proof of guilt, although adequate if taken alone,
is greatly outweighed by contrary proof. Johnson, 23 S.W.3d at 11.

 III

 Appellant argues there is no evidence or insufficient evidence he intentionally and
knowingly delivered, by actual transfer, constructive transfer and offer to sell cocaine in an
amount of 1 gram or more but less than 4 grams. See Tex. Health & Safety Code Ann.
§ 481.112(a) (Vernon 2001). The State replies there is legally and factually sufficient
evidence under an offer to sell and constructive delivery theory. Because both Appellant and

State argue the legal and factual sufficienty points together, we likewise address the issues
contemporaneously.

 Under an offer to sell theory, Appellant argues he never offered or agreed to sell
narcotics to Underwood, (citing Stewart v. State, 718 S.W.2d 286, 289 (Tex. Crim. App.
1986)). Stewart holds: "When the prosecution involves delivery 'by offer to sell' that
element can be met by the representation, by word or deed, that the person has a controlled
substance to sell." Id. at 289. That court went on to hold the offense was complete when
appellant stated that he had a hundred dollar bag of heroin to sell; the defendant had named
a "controlled substance" in his offer and thus the offense was complete. Id. Here, Gray
accompanied Bailey during each step of the transaction. In the original encounter, it was
Gray who informed Underwood they were going upstairs and Gray asked Underwood what
he wanted. Then Gray told Bailey Underwood was cool. By contextual inference, Gray was
informing Bailey that Underwood was cool to hook up Underwood with some twenties-slang
for rock cocaine. Gray was admittedly heading for the location of the cocaine in apartment
313. Gray was two feet away in the kitchen when Bailey handed the three rocks that were
refused, went to the bedroom with Bailey to obtain the five rocks, and stood by the actual
physical delivery of the cocaine to Underwood. Here, the State sustained its burden by
showing by words and deeds that Gray had a controlled substance to sell. Id.

 Gray also argues there was no or insufficient evidence to show constructive delivery. 
He relies upon, Thomas v. State, 832 S.W.2d 47, 51 (Tex. Crim. App. 1992) (holding a
"constructive transfer" occurs when the defendant transfers a controlled substance, either
belonging to him or under his control, by some other person or means, at the direction of the
defendant). In Thomas however, the defendant never relinquished control of the drugs, and
no transfer was ever accomplished. Id. at 52. Gray further argues it was Bailey not Gray that
possessed the drugs. Gray was not shown to be a resident of the apartment or to control the
drugs Bailey delivered and it was Bailey who agreed to the terms of payment and delivery. 
Gray's presence alone is not delivery even if the transfer is carried out by someone known
to Gray. 

 Gray's argument continues (citing Rasmussen v. State, 608 S.W.2d 205, 210 (Tex.
Crim. App. 1980)). (3) "The common element of these cases (defining constructive delivery)
is that prior to delivery the substance involved was directly or indirectly under the defendant's
control. In the instant case appellant exercised no direct control over the marihuana such as
would indicate that it belonged to him, nor does the evidence reflect that Kjehl Rasmussen
was acting as Appellant's agent or under his direction." Id. In Rasmussen, an undercover
officer, made arrangements to meet Rasmussen, the Appellant's brother, in a Dallas parking
lot to discuss a purchase of marihuana. Id. at 209. Appellant was driving the Mustang,
Rasmussen was in the backseat, and a third male passenger was in the front seat. At
Appellant's suggestion the parties drove to another portion of the parking lot where one
officer entered the backseat of the Mustang while the other officer squatted near the driver's
door and conversed with Appellant. Id. Rasmussen gave a "baggie" containing 1.06 ounces
of marihuana without charge to the officer in the backseat. Id. When an officer inquired as
to the quality of the marihuana, and all three occupants of the Mustang indicated that it was
"good stuff." Id. When Appellant saw a Dallas police car he stated, "Let's get out of here." 


and also "We'll get back with you." Id. Thus, prior to delivery the substance involved was
not shown to be directly or indirectly under the defendant's control. Id. at 210.

 The State counters with Gutierrez v. State, 71 S.W.3d 372, 376 (Tex. App.--Amarillo
2002, no pet.). Constructive delivery is defined as a transfer of a controlled substance, either
belonging to the accused or under his control, by some other person or agency, at the instance
and direction of the accused. Id. (citing Thomas, 832 S.W.2d at 51). The State must prove
that: (1) prior to the alleged delivery, the transferor had either direct or indirect control of the
controlled substance; and (2) the transferor knew of the existence of the transferee. Id.
Gutierrez goes on to hold that when the accused is not in exclusive possession of the place
where the contraband was found, the accused's knowledge of or control over the contraband
must be proved by independent facts and circumstances that affirmatively link appellant to
the contraband. Id. The facts and circumstances must create a reasonable inference that the
accused knew of the controlled substance's existence and that the accused exercised control
over it. Id. When we contrast Rasmussen and Gutierrez, we first note that in the former, the
drugs were not in the reach or view of the defendant and the defendant was otherwise
engaged in conversation with another officer; the Rasmussen defendant was, by inference,
unaware of the backseat conversation because he was engaged with another officer. 
Gutierrez, on the other hand was in the house where the cocaine was located. Gutierrez, 71
S.W.3d at 375. He was arrested when found lying on the floor, near a toilet, with white
powder on the seat and base of the toilet; in the bedroom was $10,000 of the $11,500 cash
given to Singleterry who made the actual delivery. Id. 

 The facts that justify a finding against Gray for constructive delivery, are on a
continuum between Gutierrez and Rasmussen. Gray had no money or drugs. But he was
clearly aware that Underwood wanted to buy drugs, led him to and let him into the apartment,
stood two feet away when Bailey attempted to transfer three rocks, went with Bailey to fetch
five rocks, watched Bailey deliver the larger quantity, and Underwood pay Bailey $100. It
was Gray who asked Underwood what he needed and approved of Underwood as "cool" in
connection with Underwood's request for cocaine. The totality of circumstances, from a
neutral view, supports a rational jury's finding of constructive delivery. Our review
demonstrates that the proof of guilt is not so obviously weak as to undermine confidence in
the jury's determination; nor is the proof of guilt, although adequate if taken alone, greatly
outweighed by contrary proof. Johnson, 23 S.W.3d at 11.

 Finally, Gray contends there is insufficient evidence to support his conviction as a
party to the offense. Under the law of parties, a person is criminally responsible for an
offense committed by the conduct of another if, acting with intent to promote or assist the
commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other
person commit the offense. Tex. Penal Code Ann. § 7.02(a)(2) (Vernon 1994). Evidence
is sufficient to convict under the law of parties where the defendant is physically present at
the commission of the offense and encourages its commission by words or other agreement. 
Ransom v. State, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994) (citing Cordova v. State, 698
S.W.2d 107, 111 (Tex. Crim. App. 1985), cert. denied, 476 U.S. 1101, 106 S.Ct. 1942, 90
L.Ed.2d 352 (1986). "In determining whether the accused participated as a party, the court
may look to events occurring before, during and after the commission of the offense, and
may rely on actions of the defendant which show an understanding and common design to
do the prohibited act." Cordova, 698 S.W.2d at 111. Circumstantial evidence may be used
to prove party status. Id. Here, ample evidence demonstrated more than mere presence and
knowledge. Cf. Amaya v. State, 733 S.W.2d 168, 174 (4) (Tex. Crim. App. 1986) (defendants
not accountable as parties without indication they knew they were assisting in the
commission of an offense). Gray participated in inviting Underwood into the apartment to
buy drugs, personally approved of Underwood, stood by both the three rock and five rock
transactions and in fact accompanied Bailey in securing the five rocks from the back
bedroom. Appellant's final issue is overruled.

 The judgment of the trial court is affirmed.

February 27, 2003


 

 DON WITTIG, Justice



Before Panel No. 5

McClure, Chew, and Wittig, JJ.

(Wittig, J., sitting by assignment)


(Do not publish)
1. Underwood testified three rocks was only a state jail offense and he wanted a felony.
2. We seriously question the propriety of having a police officer first testify about hearsay, i.e., that he heard
about the operation, and then later opine that Appellants actions were "consistent with an offer to sell." 
3. Appellant's brief refers to an incorrect citation; the State does not correct this error.
4. Appellant once again furnished us with an incorrect citation. And, although the State makes a strong case
that Appellant waived this issue for other reasons, we are not inclined to easily find waiver when a person's liberty is
at issue.