**Opinion issued April 17, 2014**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00713-CR

————————————

**JOHNNIE BRADLEY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 338th District Court**
**Harris County, Texas**
**Trial Court Case No. 1308876**

---

## MEMORANDUM OPINION

A jury found appellant, Johnnie Bradley, guilty of the offense of delivery of

a controlled substance, namely cocaine, weighing less than one gram.[1]  Appellant

then pleaded true to the allegations in two enhancement paragraphs that he had

---

[1]  *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.112(a), 481.102(3)(D) (Vernon 2010).

been twice previously convicted of felony offenses, and the trial court assessed his punishment at confinement for four years. In three issues, appellant contends that the evidence is legally insufficient to support his conviction, the jury verdict was not unanimous, and there is insufficient evidence to support the assessed court costs.

## Background

Houston Police Department ("HPD") narcotics officer H. Armstrong testified that on April 25, 2011, he and other HPD officers conducted a narcotics investigation in a neighborhood in which they believed that gang members were selling narcotics. Around 9:00 p.m., Armstrong, who was dressed in plain clothes, drove an "undercover" car to an area where narcotics were "heavily sold" and parked his car at a residence where a number of people were outside. Armstrong asked a man, "What they putting in work," which is street slang for selling narcotics, and he gave the man five dollars. The man told Armstrong that he could get narcotics at the residence, and Armstrong followed the man up the driveway of the residence. Appellant then stopped Armstrong and questioned him. Appellant asked Armstrong who he was and where he lived, and he told Armstrong that he owned the house. When Armstrong tried to find the man to whom he had given the five dollars, appellant began to give Armstrong "a little attitude," and they "exchanged words" before appellant asked Armstrong what he wanted. Armstrong

2

then told appellant that he wanted to buy $100 worth of "hard," which is the street term for crack cocaine. Appellant then opened up his cellular telephone and told Armstrong to give him his telephone number. The men then exchanged telephone numbers. Appellant gave Armstrong the name, "Jay Black" before telling him to "go ahead" and motioning him to move forward. Armstrong then walked past appellant approximately three to four feet to a man identified as Marcus Reed. Armstrong noted that when he stepped toward Reed, Reed was already pulling the crack cocaine out of a clear plastic baggie, which he handed to Armstrong. Armstrong and Reed did not speak, and Armstrong handed Reed the $100. Armstrong noted that he then went back to his car and drove back to a police station. Armstrong explained that it was his understanding that appellant is the one who offered to sell him crack cocaine and was directly or indirectly involved in Armstrong's purchase of the crack cocaine.

Dominic McCarter testified that he is a friend of appellant's cousin and he was at the home of appellant's grandmother the night of April 25, 2011. He explained that he saw two "strange dudes" come up and heard appellant arguing with them, telling them to leave. Instead of leaving, the two men walked further up the driveway. McCarter did not hear appellant tell the men to go anywhere other than to leave, and he did not hear anything else that they said.

3

Paul Coley testified that he was outside at the home of appellant's grandmother the night of April 25, 2011. Coley noted that he saw "two dudes" walk into the yard, approach appellant, and ask for narcotics. Appellant then got upset and told the men that there was nothing like that at the house and they needed to leave.

## Sufficiency of the Evidence

In his first issue, appellant argues that the evidence is legally insufficient to support his conviction because although constructive transfer was the delivery method "focused on" by the State at trial, there is "no evidence to adequately support any theory of delivery." Appellant asserts that even officer Armstrong conceded that someone else might have set up the transaction because Armstrong "employed" another man to connect him to a narcotics dealer by giving him five dollars. Appellant further asserts that he was merely present at the scene, and he notes that "mere presence is not enough" to sustain the State's burden of proof, even if he knowingly directed Armstrong to Reed. The State asserts that there is sufficient evidence to support appellant's conviction for delivery of a controlled substance, either through a constructive transfer or an offer to sell.[2]

---

[2] In its true bill of indictment, the grand jury accused appellant of delivery of a controlled substance by actual or constructive delivery, or by an offer to sell. We may consider whether the evidence is sufficient under any of the theories presented in the indictment. *See Fuller v. State*, 827 S.W.2d 919, 931 (Tex. Crim. App. 1992).

4

We review the legal sufficiency of the evidence by considering all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S. Ct. 2781, 2788–89 (1979)). Evidence is legally insufficient when the "only proper verdict" is acquittal. *Tibbs v. Florida*, 457 U.S. 31, 41–42, 102 S. Ct. 2211, 2218 (1982). Our role is that of a due process safeguard, ensuring only the rationality of the trier of fact's finding of the essential elements of the offense beyond a reasonable doubt. *See Runningwolf v. State*, 360 S.W.2d 490, 494 (Tex. Crim. App. 2012). In doing so, we give deference to the responsibility of the fact finder to fairly resolve conflicts in testimony, weigh evidence, and draw reasonable inferences from the facts. *Id.* We defer to the fact finder's resolution of conflicting evidence unless the resolution is not rational. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). However, our duty requires us to "ensure that the evidence presented actually supports a conclusion that the defendant committed" the criminal offense of which he is accused. *See Williams*, 235 S.W.3d at 750.

Jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given the witness's testimony. *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013); *Jaggers v. State*, 125 S.W.3d 661, 672 (Tex.

5

App.—Houston [1st Dist.] 2003, pet. ref'd).  And, a jury may choose to believe or disbelieve any part of a witness's testimony.  *See Davis v. State*, 177 S.W.3d 355, 358 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

A person commits the offense of delivery of a controlled substance if he knowingly or intentionally delivers a controlled substance, including cocaine. TEX. HEALTH & SAFETY CODE ANN. §§ 481.112(a), 481.102(3)(D) (Vernon 2010); *Jackson v. State*, 84 S.W.3d 742, 744 (Tex. App.—Houston [1st Dist.] 2002, no pet.).  To show constructive delivery, the State had to prove that appellant had either direct or indirect control of the transferred substance before delivery and he knew it would be delivered to a transferee.  *Sims v. State*, 117 S.W.3d 267, 277 (Tex. Crim. App. 2003).  A "constructive transfer" requires "the transfer of a controlled substance either belonging to an individual or under his control by some other person or agency at the instance or direction of the individual accused of such constructive transfer."  *Daniels v. State*, 754 S.W.2d 214, 220 (Tex. Crim. App. 1988) (quoting *State v. Ellis*, 161 W.Va. 40, 239 S.E.2d 670 (1977)).  A constructive transfer may also occur when the delivery is made by implication. *See Payan v. State*, 199 S.W.3d 380, 384 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd).

The Texas Court of Criminal Appeals has explained that an actual and a constructive transfer of narcotics can occur in the same transaction.  *Sims*, 117

6

S.W.3d at 270. In *Sims*, after an undercover officer met the defendant to buy crack cocaine, the defendant "pointed to a foil-wrapped package lying in the road near a tree." *Id.* at 268. The officer retrieved the package and paid the defendant for the cocaine contained inside. *Id.* The court noted that:

> [O]ne method of constructive transfer is for the transferor to instruct the recipient on the location of the contraband. If the contraband is already in place, the constructive transfer is complete at the time the transferor gives the instruction. When the recipient retrieves the contraband, there is then a completed actual transfer.

*Id.* at 277–78.

The State asserts that the evidence is also sufficient to support appellant's conviction on the theory of an offer to sell. When delivery of a controlled substance is by offer to sell, no transfer need take place. *Stewart v. State*, 718 S.W.2d 286, 288 (Tex. Crim. App. 1986). The offense is complete when, by words or deed, a person "knowingly or intentionally offers to sell what he states is a controlled substance." *Id.* Proof of such an offer to sell must be corroborated by some evidence other than the statement of the person to whom the offer to sell is made. TEX. HEALTH & SAFETY CODE § 481.182 (Vernon 2010). Evidence that the offeror had possession or access to the controlled substance offered can satisfy this requirement. *See Evans v. State*, 945 S.W.2d 259, 261 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd). "[W]hen delivery is by offer to sell no transfer need take

place.  A defendant need not even have any controlled substance." *Stewart*, 718 S.W.2d at 288.

Here, appellant asked Officer Armstrong why he was at the house and what he wanted.  Armstrong told appellant that he wanted to buy "$100 worth of hard," which is crack cocaine.  Appellant then took Armstrong's telephone number, entered it into his phone, gave Armstrong his name as "Jay Black," and gave Armstrong his telephone number.  Appellant then said "go ahead" and motioned Armstrong forward toward Reed, who was only a few feet away.  Armstrong explained that as he moved forward past appellant to Reed, Reed was already pulling crack cocaine out of a baggie for him in the amount that he told appellant he wanted.  Armstrong and Reed did not exchange words, and Armstrong handed Reed the agreed-to $100 for the cocaine, completing the transaction.  There is no evidence that Reed and Armstrong had any conversation, or in any way negotiated the transaction.  Rather, the jury could have reasonably found that appellant and Armstrong negotiated the deal when appellant asked Armstrong what he wanted and Armstrong told appellant "$100 worth of [crack cocaine]" followed by their exchange of information and appellant's direction to Armstrong to "go ahead." Reed then immediately pulled out the correct amount of cocaine as Armstrong stepped toward him.  Armstrong did acknowledge that he thought the first man to whom he spoke and gave five dollars was going to direct him to someone who

8

would then sell him narcotics, and Armstrong did not see and did not know if that man spoke to Reed while Armstrong was talking to appellant. However, "reconciliation of conflicts in the evidence is within the exclusive province of the jury." *Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000) (quoting *Losada v. State*, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986)).

Although appellant points out that the transaction did not take place inside his house or vehicle and it occurred "outside at night in a very crowded area," we note that the transaction took place in the driveway just outside the house. Witnesses testified that the home belonged to appellant's grandmother and appellant greeted and intercepted people in the driveway, presented himself as living there and having control over the premises, and consented to the admittance of individuals onto the property. And officer Armstrong testified that appellant told him that it was his house and, therefore, he felt compelled to answer appellant's questions. Armstrong further testified to his understanding that appellant is the one who offered to sell him cocaine and was directly or indirectly involved in the transaction.

Viewing the evidence in the light most favorable to the jury's verdict, as we must, we conclude that a rational trier of fact could have reasonably found that Reed acted at appellant's direction when he pulled out the exact amount of crack cocaine that Armstrong had requested from appellant. *See Hubbard v. State*, 896

9

S.W.2d 359, 363 (Tex. App.—Houston [1st Dist.] 1995, no pet.) (finding sufficient evidence to support trial court's judgment that appellant constructively transferred controlled substance by directing other person to transfer substance and standing nearby as transaction occurred). Accordingly, we hold that the evidence is legally sufficient to support appellant's conviction for delivery of a controlled substance.

We overrule appellant's first issue.

## Unanimous Jury

In his second issue, appellant argues that the trial court erred in "accepting a verdict that was not unanimous" because the jury foreman "twice expressed that he did not agree with the verdict."

When the jury initially told the trial court that it had reached a verdict and returned to the courtroom, the following exchange took place:

| THE COURT: | Members of the jury, have you arrived at a verdict? |
|---|---|
| FOREPERSON: | Yes. |
| THE COURT: | Pass it to the deputy. |
| (Foreperson complied.) | |
| THE COURT: | In cause No. 1308876; "We, the jury, find [appellant], guilty of delivery of a controlled substance, namely, cocaine, weighing by aggregate weight, including any adulterants and dilutants, less than 1 gram, as |

10

charged in the indictment." Signed by the Foreman of the jury. Is this each and every one's individual verdict as well?

JURORS: Yes.

THE COURT: Is there anything further at this time?

[APPELLANT'S COUNSEL]: Not from the jury, Your Honor.

THE COURT: All right. You may be seated. All right. Ladies and gentlemen, this concludes your service in this case. I've advised you all along that you couldn't talk about this case with anyone. Now you may. If you want to talk to the lawyers you can. If you don't want to, you don't have to. You can go home now and sleep from all the pizza you had for lunch. It's a joke. All right. Be sure and leave your badges. Other than that you're free to go.

JUROR: What if all 12 people don't agree?

THE COURT: Get back in the jury box, please. Are you Mr. Barnett?

JUROR: That's me, sir.

THE COURT: You're the Foreman of the jury?

11

| | |
|---|---|
| JUROR: | Yes, sir. |
| THE COURT: | You signed the verdict saying that [appellant] was guilty. Are you disagreeing with that verdict? |
| JUROR: | Yes, sir, I really do. |
| THE COURT: | All right. Retire to the jury room and continue your deliberations. |

After the jury went back to the jury room and continued its deliberations, it later returned to the courtroom again after informing the court that it had reached a verdict. When the trial court asked if the jury had reached a verdict, Mr. Barnett, as the jury foreman, replied, "Yes, sir." The trial court then read the verdict in which the jury found appellant guilty of delivery of a controlled substance. The trial court then polled the jury by calling each juror's name, including Barnett, and asking if that was their verdict:

| | |
|---|---|
| THE COURT: | Daniel Barnett, is this your verdict? |
| JUROR BARNETT: | No. |
| THE COURT: | Sir? |
| JUROR BARNETT: | Yes. |

The trial court then excused the jury. Appellant asserts that because Barnett initially answered "no" the second time, the trial court was required, without

12

exception, to order another deliberation.  *See* TEX. CODE CRIM. PROC. Art 37.05

(Vernon 2006).  The State argues that appellant waived any error by failing to

object.

Article 37.05 provides that the State or a defendant may have the jury polled.

If any juror answers negatively, the jury shall retire again to consider its verdict.[3]

*See id*.  However, a request must be made to poll the jury and an objection made if

the trial court refuses.  *Reese v. State*, 773 S.W.2d 314, 317 (Tex. Crim. App.

1989) ("A poll of the jury must be requested or it is waived.").

Appellant did not object after Barnett corrected his answer during the second

poll from "no" to "yes," and appellant did not ask the trial court to retire the jury

for additional deliberations.  Appellant has thus waived any complaint for appellate

review.  *See Adair v. State, No*. 03-11-00318-CR, 2013 WL 6665033, at *5 (Tex.

App.—Austin Dec. 12, 2013, no pet.) (mem. op., not designated for publication)

(finding waiver when defendant did not request jury poll or otherwise object to any

aspect of district court's procedure in confirming verdict); *Llorance v. State*, 999

S.W.2d 866, 869 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (finding waiver

---

[3]       Article 37.05 specifically states:

> The State or the defendant shall have the right to have the jury polled, which is done by calling separately the name of each juror and asking him if the verdict is his. If all, when asked, answer in the affirmative, the verdict shall be entered upon the minutes; but if any juror answer in the negative, the jury shall retire again to consider its verdict.

> TEX. CODE CRIM. PROC. ANN. art. 37.05 (Vernon 2006).

when defense counsel did not make timely and specific objection after juror asked about "what if" situation rather than affirmatively answering that it was his verdict).

We overrule appellant's second issue.

## Sufficiency of Bill of Costs

In his third issue, appellant argues that the evidence is insufficient to support the imposition of court costs in the amount of $339 because the record contains no evidence to support this fee. And appellant asserts that the clerk's record does not contain a bill of costs, despite his specific request. A district clerk must keep a record of each fee or item of cost charged for a service rendered in a criminal action or proceeding. *See* TEX. CODE CRIM. PROC. ANN. art. 103.009(a)(1) (Vernon 2006). Here, the clerk's record was supplemented after appellant filed his brief, and the supplemental record contains a bill of costs. *See Johnson v. State*, PD-0193-13, 2014 WL 714736, at *2 (Tex. Crim. App. Feb. 26, 2014). Traditional sufficiency of the evidence standards of review do not apply. *Id.*

We overrule appellant's third issue.

14

**Conclusion**

We affirm the judgment of the trial court.

                                        Terry Jennings
                                        Justice

Panel consists of Justices Jennings, Higley, and Sharp.

Do not publish. TEX. R. APP. P. 47.2(b).